2004 WY 100

**Harland Pierre KENYON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–253.

Supreme Court of Wyoming.

Aug. 27, 2004.

Rehearing Denied Sept. 29, 2004.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Assistant Attorney General. Argument by Ms. Morgan.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Following a jury trial, Appellant Harland Pierre Kenyon was convicted of first degree premeditated murder, for which he received a sentence of life without parole, aggravated burglary, kidnapping, and battery. Kenyon was charged with and convicted of these crimes for domestic violence against a former girlfriend and the shooting death of her brother. On appeal, Kenyon claims that the recent statutory amendment adding life imprisonment without parole as a penalty for first degree murder violates due process, that insufficient evidence supports his convictions, and that numerous trial errors warrant reversal.

[¶ 2] We hold that the life imprisonment without parole provision of Wyo. Stat. Ann. § 6–2–101(c) (LexisNexis 2003) does not violate due process and Kenyon's convictions and sentences should be affirmed on all issues.

## ISSUES

[¶ 3] Kenyon presents the following statement of the issues for our review:

I. Whether the life imprisonment without parole provision of W.S. § 6–2–101(c) is unconstitutional under the due process clauses of the United States Constitution and the Wyoming Constitution?

II. Whether sufficient evidence did not exist to support Appellant's aggravated burglary conviction because it is not clear on what ground(s) the jury based its verdict of guilty?

III. Whether the trial court erred in allowing the testimony of the state's expert witness Katherine Conover, as said testimony was used by the State as improper

character evidence against appellant, and constituted plain error?

IV. Whether the trial court erred in admission of evidence under W.R.E. 404(b) and additionally whether the same evidence should have been deemed inadmissible under W.R.E. 403?

V. Whether the prosecutor committed prosecutorial misconduct when he misled the jury on the facts necessary to find Mr. Kenyon guilty of kidnapping?

VI. Whether because of the numerous errors made during Mr. Kenyon's trial, cumulative error occurred?

The State rephrases the issues as:

I. Does the provision of Wyo.Stat.Ann. § 6-2-101(c), which provides for a sentence of life imprisonment without parole for first degree murder, violate procedural due process under the United States and Wyoming Constitutions?

II. Was the aggravated burglary charge set out in the instructions given to the jury supported by sufficient evidence?

III. Did the trial court commit plain error when it allowed the testimony of the State's expert witness, Katharine Conover?

IV. Did the trial court abuse its discretion when it admitted uncharged misconduct evidence under Wyo.R.Evid. 404(b)?

V. Did the prosecutor commit prosecutorial misconduct during closing argument?

VI. Does cumulative error apply in this case?

## FACTS

[¶ 4] Kenyon and Danielle Kelley, both methamphetamine addicts, began living together in the summer of 2000. The relationship was abusive, and Kenyon physically assaulted Kelley on numerous occasions. In March of 2001, the couple was living in California, but because of the abuse she was suffering, Kelley moved to Cody, Wyoming, to live with her brother, Justin Ritter. Kenyon soon found her, and the two reconciled in Cody. At Mr. Ritter's invitation, Kenyon began living in the apartment with Kelley and Ritter.

[¶ 5] On April 10, 2001, Kenyon and Kelley argued, and he choked Kelley until she lost consciousness several times. Kenyon confined Kelley inside the apartment for two days, threatening to kill her if she went near a door. She escaped while Kenyon was in the shower and was taken to the hospital but refused medical treatment. Fearing that he would be arrested, Kenyon left Cody and called Kelley about a week later to apologize for the incident. When she refused to renew the relationship, Kenyon called the apartment repeatedly. Ritter would not let Kenyon speak to Kelley, and Kenyon threatened Ritter's life. Ritter reported the threats to the police, applied for a restraining order, obtained a gun from his mother and blocked doors with shovels to prevent Kenyon from breaking into the apartment.

[¶ 6] Kenyon drove to Cody and, on May 4, 2001, parked on another street away from the apartment, made sure no one was in the apartment, and then entered the apartment armed with a crowbar, which he traded for the gun that he found inside. Kenyon may have had a key to Ritter's apartment, and although Ritter noticed the door was unlocked, Ritter and his fiancée, Amanda Payne, entered Ritter's apartment. Ritter screamed, and Payne turned to see Kenyon pointing a gun at Ritter. Kenyon demanded to know where Kelley was and, when Ritter told him to leave, struck Ritter with a closed fist. Ritter told Kenyon that Kelley was in jail, and Kenyon struck him again. Bleeding, Ritter stood to get a rag, and Kenyon put the gun inside of Ritter's mouth, forcing him to sit down, and again struck him. Payne was crouched in a corner comforting her crying two-year-old son. After Kenyon reached for some duct tape, saying he wanted to shut the kid up, Ritter went to the front door, opened it and told Kenyon to leave. Kenyon ordered Ritter away from the door, again threatening to kill him. Ritter told Payne to leave, and as she approached the door, Kenyon told her he would kill Ritter if she left. Payne returned to the corner with her son. Ritter again told her to leave, and as she started for the door she heard the gun discharge. Ritter, shot in the chest, collapsed outside of his door. Kenyon fled out the back door. Ritter died soon after arriving at the hospital from a single gunshot wound to the chest. Kenyon was arrested in Las Vegas, Nevada. He admitted shooting Ritter but claimed it was an accident.

[¶ 7] Kenyon was charged with committing first degree murder[1] and aggravated burglary[2] on or about May 4, 2001, and kidnapping[3] and battery[4] on or about April 8, 2001, and April 12, 2001. The State later amended the first degree murder charge to describe its penalty as "death, life imprisonment without parole, or life imprisonment." The State provided notice that it intended to offer W.R.E 404(b) and W.R.E. 609 evidence of twenty-one incidents involving nine people. Upon defense objection, a hearing was held, and eight of these incidents were ruled inadmissible. A jury trial was held, and Kenyon testified in his own defense. He was convicted of first degree murder, aggravated burglary, kidnapping and battery. Upon State notice of intent to seek life imprisonment without parole, Kenyon filed a motion, contending that § 6–2–101(c) violated the due process clause under the federal and state constitutions; federal precedent prohibits sentence enhancement without a jury finding; and a sentence of life without parole was not warranted. The district court ruled the statute was constitutional and sentenced Kenyon to life without parole for first degree murder, with lesser sentences for his other convictions. This appeal followed.

1. Wyo. Stat. Ann. § 6–2–101, murder in the first degree, states in pertinent part:

    (a) Whoever purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest, kidnapping or abuse of a child under the age of sixteen (16) years, kills any human being is guilty of murder in the first degree.
    (b) A person convicted of murder in the first degree shall be punished by death, life imprisonment without parole or life imprisonment according to law, except that no person shall be subject to the penalty of death for any murder committed before the defendant attained the age of sixteen (16) years.

2. Wyo. Stat. Ann. § 6–3–301, aggravated burglary, states in pertinent part:

    (a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.
    * * * *
    (c) Aggravated burglary is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,-

## DISCUSSION
### Constitutionality of Statute
*1. Standard of Review*

■■■■ [¶ 8] One who attacks the constitutionality of a statute assumes the burden of establishing his contention clearly and beyond a reasonable doubt. In determining such issues we start with a presumption of constitutionality of the legislative enactment, and it is our rule of jurisprudence that we should resolve any reasonable doubts as to constitutionality by upholding the statute if possible. * * * With respect to his standing to raise such an issue the rule is that, with the limited exception of challenges to statutes that broadly prohibit speech protected by the First Amendment, a party must demonstrate the manner in which his own rights are adversely affected in light of the circumstances before the court in order to present his constitutional challenge.

*Small v. State,* 689 P.2d 420, 426 (Wyo.1984).

*2. Due Process Implications of Penalty of Life Without Parole*

■■ [¶ 9] The statute governing sentencing for first degree premeditated murder states:

000.00), or both, if, in the course of committing the crime of burglary, the person:
    (i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon;
    (ii) Knowingly or recklessly inflicts bodily injury on anyone; or
    (iii) Attempts to inflict bodily injury on anyone.

3. Wyo. Stat. Ann. § 6–2–201, kidnapping, states in pertinent part:

    (a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:
    (i) Hold for ransom or reward, or as a shield or hostage;
    (ii) Facilitate the commission of a felony; or
    (iii) Inflict bodily injury on or to terrorize the victim or another.
    (b) A removal or confinement is unlawful if it is accomplished:
    (i) By force, threat or deception[.]

4. Wyo. Stat. Ann. § 6–2–501(b) states: "A person is guilty of battery if he unlawfully touches another in a rude, insolent or angry manner or intentionally, knowingly or recklessly causes bodily injury to another."

A person convicted of murder in the first degree in a case in which the state seeks the death penalty shall be sentenced in accordance with the provisions of W.S. § 6–2–102. In all other cases, including any case in which the state has determined not to seek the death penalty at any stage of the proceeding, the judge shall determine the sentence of life imprisonment without parole or life imprisonment taking into consideration any negotiated plea agreement and any evidence relevant to a determination of sentence which the court deems to have probative value.

Wyo. Stat. Ann. § 6–2–101(c) (LexisNexis 2003).

[¶ 10] Kenyon contends that the statute is unconstitutional because it fails to guide the trial court in sentencing and denies this Court the ability to review the trial court's imposition of life imprisonment without parole; because it allows the trial court instead of a jury to sentence a defendant to life imprisonment without parole in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and because the State did not give notice to the defendant that it would be seeking life imprisonment without parole until just before the sentencing hearing.

[¶ 11] Sentencing is a critical stage of a criminal proceeding and must satisfy the requirements of due process; however, sentencing does not implicate the entire spectrum of criminal trial procedural rights. *Christy v. State,* 731 P.2d 1204, 1207 (Wyo. 1987) (citing *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967)); *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977); *see People v. Hansen,* 99 N.Y.2d 339, 756 N.Y.S.2d 122, 786 N.E.2d 21, 24 (2003). Outside of capital proceedings, sentencing must ensure that the information the sentencing court relies upon is reliable and accurate and that the defendant has an opportunity to respond to the facts upon which the court may base its decision.[5] *Christy,* at 1207;

*Hansen,* 756 N.Y.S.2d 122, 786 N.E.2d at 24. In a number of cases, this Court has stated the approach to be taken with respect to sentence review. "The standard that is invoked is that a sentence will not be disturbed as a violation of due process of law unless the defendant can show (1) an abuse of discretion; (2) procedural conduct prejudicial to him; and (3) either circumstances which manifest inherent unfairness and injustice, or some conduct that offends the public sense of fair play." *Alexander v. State,* 823 P.2d 1198, 1203 (Wyo.1992). The sentencing court must properly inform itself with respect to the character of the defendant as well as the crime and its circumstances and follow the procedures provided in W.R.Cr.P. 32. *MJP v. State,* 706 P.2d 1108, 1110 (Wyo.1985). The punishment for a crime is within the legislature's province. *Wilks v. State,* 2002 WY 100, ¶ 40, 49 P.3d 975, ¶ 40 (Wyo.2002). *Wilks* summarized our standards:

> "[W]e do not set aside a sentence if it is within the legislatively mandated minimum and maximum terms in the absence of a clear abuse of discretion." *Young v. State,* 904 P.2d 359, 362 (Wyo.1995). Since the relevant statute sets a maximum term of life in prison, Mr. Wilks' sentence is within permissible limits. However, we still "maintain a window of reviewability, even when the trial court has imposed a legally prescribed sentence." *Smith v. State,* 922 P.2d 846, 848 (Wyo.1996). Trial courts have broad discretion to determine the appropriate length of imprisonment. We recently described the standard of an abuse of discretion as "reaching the question of reasonableness of the choice made by the trial court." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). We confirmed the following definition:
>
> > "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously."

---

**5.** While our state Constitution can afford a broader scope of protection with regard to individual rights and liberties than its federal counterpart, Kenyon has preserved no grounds to impose any heightened due process procedures because he has not provided any independent state constitutional analysis. *Meek v. State,* 2002 WY 1, ¶ 7 n. 2, 37 P.3d 1279, ¶ 7 n. 2 (Wyo.2002).

*Id.* (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)).

"In assessing the reasonableness of the sentence, consideration is to be given to the crime and its circumstances and the character of the criminal." *Smith*, 922 P.2d at 848–49.

*Wilks*, ¶ 40.

[¶ 12] Kenyon concedes that he raises the issues of guidelines and notice for the first time on appeal but contends that these due process protections are of such a fundamental nature that the Court should take cognizance. In a non-capital sentencing context, when our review demonstrates that the sentencing judge has met the due process standards stated above, an argument that the manner in which an additional non-capital penalty has been applied is not so fundamental in nature that we will address the statute's constitutionality when there has been a failure to raise the issues before the sentencing court and preserve them for our review. *Statezny v. State*, 2001 WY 22, ¶¶ 11, 12, 18 P.3d 641, ¶¶ 11, 12 (Wyo.2001). Our review does show that the sentencing court afforded Kenyon due process, and we will not consider the guidance and notice issues for the first time on appeal. The record shows that notice and opportunity to be heard were provided to Kenyon when, before trial, the State amended the Information to incorporate the penalty of life without parole, and after trial, the State filed a notice of intent to seek that penalty with adequate time for Kenyon to prepare for his sentencing hearing. Kenyon did present evidence and witnesses at the hearing. He contends that the sentencing court abused its discretion by its sentence of life without parole; however, the trial court has broad discretion to sentence within the minimum and maximum sentence mandated. The sentencing court set forth detailed reasons for its decision to impose the maximum sentence allowed, none of which were arbitrary or unreasonable. We find no abuse of discretion.

[¶ 13] Kenyon did challenge the sentencing scheme as violating *Apprendi* which held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Spinner v. State*, 2003 WY 106, ¶ 29, 75 P.3d 1016, ¶ 29 (Wyo.2003). Kenyon contends that the life-without-parole provision is a sentence enhancement within the reach of *Apprendi*. The statutory penalty of life without parole is one of three punishments for which no further factfinding is required once a jury has determined that the crime of first degree murder has been proved. Because the statute does not require the finding of additional facts independent of those proving the underlying offense, the constitutional concerns addressed in *Apprendi* are not implicated. The sentence of life without parole for the first degree murder conviction is affirmed.

### Sufficiency of the Evidence

*1. Standard of Review*

[¶ 14] In reviewing Kenyon's sufficiency of the evidence claim, we utilize our usual standard:

When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury, ... our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*May v. State*, 2003 WY 14, ¶ 11, 62 P.3d 574, ¶ 11 (Wyo.2003) (quoting *Williams v. State*, 986 P.2d 855, 857 (Wyo.1999) (citations and quotation marks omitted)).

*2. Evidence of Aggravated Burglary*

[¶ 15] Kenyon was convicted of aggravated burglary under § 6–3–301, which language has been set out earlier in this opinion. Kenyon argues the State was re-

quired to show he entered Ritter's apartment with the intent to commit both larceny and a felony because the Information included both statutory alternatives in charging the crime of aggravated burglary. In recent cases, we have established the rule that a "verdict must be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Bush v. State*, 908 P.2d 963, 966 (Wyo.1995) (internal quotation marks omitted). We have explained that "if a jury is instructed in the alternative, and if that jury returns a general verdict of guilty, then upon appellate review of the sufficiency of the evidence to support the conviction, the record must support each alternative beyond a reasonable doubt." *Tanner v. State*, 2002 WY 170, ¶ 15, 57 P.3d 1242, ¶ 15 (Wyo.2002) (emphasis omitted). The Amended Information stated in relevant part:

> On or about May 4, 2001, in Park County, Wyoming, without authority, [Kenyon did] enter or remain in a building, occupied structure, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein, and in the course of committing the crime of burglary became armed with or used a deadly weapon and/or knowingly or recklessly inflicted bodily injury on anyone, namely: Justin Scott Ritter....

[¶ 16] The State concedes that the Information does not accurately reflect the more limited theories upon which the State eventually elected to proceed at trial, and it did not amend the Information accordingly. The State contends, however, that *May* permits avoiding reversible error if proper jury instructions are provided that are limited to the theories for which the State has presented evidence. It contends that the instructions in this case did not include the theory that Kenyon entered Ritter's apartment with larcenous intent and the jury was therefore properly advised that the State was proceeding only on the theory that such entry was accompanied by intent to commit a felony and it did not have to prove larcenous intent beyond a reasonable doubt. Because Kenyon was notified that the State was not proceeding on the theory that the aggravated

burglary involved the intent to commit larceny, Kenyon was fairly informed of the charge against him so that he could adequately defend himself.

[¶ 17] We look to the jury instructions to determine whether the State specified the crime on which it is relying. *May*, ¶¶ 27, 28. A thorough review of the jury instructions in this case convinces us that the jury was, in fact, instructed that Kenyon entered the apartment with the intent to commit first degree murder or aggravated assault. The relevant instructions stated:

Instruction No. 27

The elements of the crime of Aggravated Burglary, as charged in this case, are

1. On or about May 4, 2001
2. In Park County, Wyoming
3. The Defendant, Harland Pierre Kenyon
4. Without authority
5. Entered or remained in a building, or occupied structure
6. With intent to commit therein the felony offense of first degree murder or aggravated assault, or both, and....

Instruction No. 29

Before you can find the Defendant is guilty of aggravated burglary you must find that the Defendant entered the Ritter apartment intending all of the elements in one or more of the following three (3) sets.

1. A person causes serious bodily injury
2. To another
3. Intentionally or knowingly
4. Under the circumstances manifesting extreme indifference to the value of human life;

OR

1. A person
2. Intentionally or knowing[ly]
3. Causes bodily injury
4. To another.
5. With a deadly weapon.

OR

1. A person
2. Purposely; and
3. With premeditated malice
4. Killed a human being, namely: Justin Scott Ritter. . . .

### Instruction No. 30

To be convicted of the offense of aggravated burglary, Mr. Kenyon must have formed the intent to commit first degree murder or aggravated assault or both prior to his entry into the Ritter apartment. It is not enough that he formed the intent required after he entered the apartment.

[¶ 18] The jury was provided with a general verdict, and it is unknown what specific alternative was selected. The State therefore had the burden of proving each alternative beyond a reasonable doubt, and we shall review the sufficiency of the evidence accordingly. Kenyon points out that it is unlikely the State met this burden because of the inconsistency created when the prosecutor argued to the jury that it did not have to find that Kenyon had the intent to commit first degree murder before he entered Ritter's apartment in order to find Kenyon guilty of first degree murder even though Instruction No. 30 stated otherwise. However, we agree with the State that immediately after the prosecutor argued the elements of first degree murder, he explained that Kenyon must have formed the intent to commit first degree murder before he entered the apartment to have committed aggravated burglary. Under these facts, we agree with the State that it had only to prove that Kenyon formed the intent to commit first degree murder before he entered the apartment and not while he remained there. Our review of the record shows that each of the alternative theories presented in the jury instructions was supported by sufficient evidence to sustain conviction. Kenyon had called and threatened Ritter repeatedly in the two weeks preceding the shooting. He drove to Cody and parked on another street away from the apartment, made sure no one was in the apartment and then entered the apartment armed with a crowbar which he traded for the gun that he found. Kenyon may have had a key to Ritter's apartment, and because no sign of break-in was seen and Payne and Ritter noticed the door was unlocked, the jury could infer that Kenyon possessed the crowbar as a weapon, not an entry tool. Further, the jury could infer Kenyon's intent when he entered from Kenyon's subsequent actions. The jury was properly instructed, and the evidence supported the jury determination that Kenyon committed aggravated burglary when he entered the apartment with the intent to commit first degree murder or aggravated assault.

### Admissibility of Evidence

1. *Standard of Review*

[¶ 19] Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion.

We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such abuse.

*Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758, ¶ 25 (Wyo.2001) (citations and quotation marks omitted).

[¶ 20] No objection was made at trial regarding the specific testimony challenged upon appeal, and we must apply our plain error standard of review. "Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule

of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Mazurek v. State,* 10 P.3d 531, 535 (Wyo.2000) (citing *Yetter v. State,* 987 P.2d 666, 668 (Wyo.1999)).

### 2. Admissibility of Expert Testimony

■■■ [¶ 21] During its case-in-chief, the State called Katherine Conover to testify as an expert witness concerning the "cycle of violence" that occurs between abusers and victims of domestic violence. Kenyon contends that Conover also improperly testified to improper character and profiling evidence in violation of W.R.E. 404 when she described the characteristics of batterers as well as victims of domestic violence. The State contends that Kenyon defended against the battery and kidnapping charges by claiming a mutually abusive relationship that caused him to act in self-defense against Kelley's battery; that Kelley could have left the apartment and was not kidnapped; and Kelley later returned to the apartment and resumed an intimate relationship with him. Conover testified as an expert to explain why victims of domestic abuse often return to the abusive relationship. Battered-woman-syndrome testimony is admissible and helpful to the jury; however, it must not run afoul of W.R.E. 404(a) which provides in pertinent part:

> Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion.

When battered-woman-syndrome testimony is raised by the State in its case-in-chief and relates to a defendant, as it did in the instant case, the "testimony 'draws close to commenting directly on what likely happened' and 'looks like character evidence after all.' " *Ryan v. State,* 988 P.2d 46, 55 (Wyo. 1999) (quoting Christopher B. Mueller & Laird C. Kirkpatrick, 3 *Federal Evidence* § 351, at 637 (2d ed.1994)). Evidence concerning a defendant's involvement demands close scrutiny under the character evidence rules. *Ryan,* at 55. "This is so even if reference to the defendant may only be inferred from the testimony." *Id.*

[¶ 22] Our previous decisions found error in admitting this kind of expert testimony; however, the State asserts that *Ryan* and *Skinner* are distinguishable. In *Ryan,* this Court held the testimony pertaining to separation violence was inadmissible because the testimony "was introduced for the purpose of proving the defendant committed the act in contrast to his assertion that the victim committed suicide." *Skinner,* ¶ 28 (explaining *Ryan,* at 56). In *Skinner,* the defendant was charged with aggravated assault with a deadly weapon. The expert in *Skinner* explored "the general characteristics and conduct of batterers, with particular focus on the tendency for violence to escalate over time." *Skinner,* ¶¶ 28–29. Because Skinner did not dispute that a simple assault occurred, the escalation evidence tended to imply that his history proved he had threatened her with a knife and committed aggravated assault. *Skinner* ruled that evidence inadmissible.

[¶ 23] In this case, Conover's testimony was an explanation for Kelley's irrational behavior in answer to Kenyon's specific defenses that her behavior proved he had not battered or kidnapped her. An explanation of the victim's conduct is admissible, and to the extent that it describes characteristics of those in the relationship, those references are an integral part of admissible framework evidence and not character evidence. *Ryan,* 988 P.2d at 54–55; *see also Ryan,* 988 P.2d at 64–65 (Golden, J., dissenting and concurring). We find no error in admission of this testimony.

### 3. Admissibility of Evidence Under W.R.E. 404(b) and 403.

■■■ [¶ 24] Kenyon argues that the jury did not find the shooting to be accidental because it heard improper uncharged misconduct evidence from Kelley, Kenyon's former wife, and Kenyon's friend, Brian Inman, that was extremely prejudicial and inflammatory. He concedes that procedurally, the trial court and the attorneys scrupulously complied with the mandates of this Court for admission or objection to W.R.E. 404(b) evidence; however, he claims that substantively the trial court erred in its admission under both W.R.E. 404(b) and W.R.E. 403. The

evidence objected to by Kenyon was admitted following a proper hearing applying the factors of *Vigil v. State,* 926 P.2d 351, 354–55 (Wyo.1996). Although Kenyon mentions Inman, he limits his argument to the many instances of abuse testified to by Kelley and his former wife. Kenyon disagrees that any of this evidence was needed to prove a disputed factor such as intent; however, Kenyon denied that he intentionally shot Ritter and denied that he had battered or kidnapped Kelley. The abuse evidence showed the course of conduct between Kenyon and both victims was relevant to rebut Kenyon's defenses to the charge and to tell the jury the entire sequence of events that led to the kidnapping and murder. We find no abuse of discretion in admitting the evidence.

### Prosecutorial Misconduct

#### 1. Standard of Review

[¶ 25] *Dysthe v. State,* 2003 WY 20, ¶¶ 22, 23, 63 P.3d 875, ¶¶ 22–23 (Wyo.2003), sets forth our standard of review for this issue:

Allegations of prosecutorial misconduct are reviewed

"by reference to the entire record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. Similarly, the propriety of any comment within a closing argument is measured in the context of the entire argument.... [R]eversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict."

*Mazurek v. State,* 10 P.3d 531, 542 (Wyo. 2000) (quoting *English v. State,* 982 P.2d 139, 143 (Wyo.1999)). The burden of proof is assigned to the defendant. *Tennant v. State,* 786 P.2d 339, 346 (Wyo.1990).

Because no objection to the prosecutor's closing argument was made at trial, we review the claim under our plain error standard. *Mitchell v. State,* 982 P.2d 717, 723–24 (Wyo.1999). " 'Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the

error was denied a substantial right which materially prejudiced him.' " *Mazurek,* 10 P.3d at 535 (quoting *Yetter v. State,* 987 P.2d 666, 668 (Wyo.1999)). Prejudice results if [defendant] can show that he was not allowed a trial on its own merits. *Mazurek,* 10 P.3d at 536. Where the plain error elements are met, we may correct the error if it " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Johnson v. United States,* 520 U.S. 461, 469–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (quoting *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), *cert. denied,* 519 U.S. 931, 117 S.Ct. 303 [136 L.Ed.2d 221] (1996)).

#### 2. Closing Argument

[¶ 26] After the expert testified about battered women's syndrome, the prosecutor argued that Kelley had been kidnapped for the entire time she was in a relationship with Kenyon because of his control over her. Kenyon alleges this argument confused the jury and it could have found him guilty of kidnapping without a showing that he exercised the physical control over her that was necessary to prove that offense. The State contends that the prosecutor properly explained that Kelley's past abuse made her too afraid to leave her abuser and was not confusing.

[¶ 27] In presenting a closing argument, the prosecutor is entitled to reflect upon the evidence and to draw reasonable inferences from that evidence to assist the jury. *Jeschke v. State,* 642 P.2d 1298, 1301–02 (Wyo.1982). The prosecutor told the jury:

Dani Kelley was kidnapped, as the elements show, for that two and a half days. But do you know what? Dani Kelley was kidnapped for eight months of this relationship. The defendant controlled her all eight months.

Under the kidnapping statute, confinement is unlawful if it is accomplished by force or threat. § 6–2–201(b)(i). Kelley had not left the apartment during the kidnapping although the doors had been unlocked, and in attempting to explain this behavior, the prosecutor made the above argument. We agree

with the State that the prosecutor's analogy was not confusing and was an attempt to assist the jury in understanding Kelley's level of fear and resulting behavior. Kenyon has not demonstrated plain error by this single statement, and we find no error. Because we have found no error, we need not consider the issue of cumulative error.

[¶ 28] The judgment and sentence is affirmed.