**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 4, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

HARLAND P. KENYON,

        Petitioner - Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS; WYOMING
ATTORNEY GENERAL,

        Respondents - Appellees.

No. 08-8074

(D. Wyoming)

(D.C. No. 07-CV-00070-ABJ)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **KELLY**, **BRISCOE**, and **ANDERSON**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this proceeding. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case

is therefore ordered submitted without oral argument.

Petitioner/appellant Harland P. Kenyon, a Wyoming state prisoner

proceeding *pro se*, seeks a certificate of appealability ("COA") in order to appeal

---

[*]This order is not binding precedent except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the district court's dismissal of his 28 U.S.C. § 2254 petition for a writ of habeas

corpus.  We deny Kenyon a COA and dismiss this appeal.


## BACKGROUND

As did the district court, we quote from the opinion of the Wyoming

Supreme Court affirming Kenyon's conviction and sentence to set forth the

pertinent facts in this case:

> Kenyon and Danielle Kelley, both methamphetamine addicts, began living together in the summer of 2000.  The relationship was abusive, and Kenyon physically assaulted Kelley on numerous occasions.  In March of 2001, the couple was living in California, but because of the abuse she was suffering, Kelley moved to Cody, Wyoming, to live with her brother, Justin Ritter.  Kenyon soon found her, and the two reconciled in Cody.  At Mr. Ritter's invitation, Kenyon began living in the apartment with Kelley and Ritter.

> On April 10, 2001, Kenyon and Kelley argued, and he choked Kelley until she lost consciousness several times. Kenyon confined Kelley inside the apartment for two days, threatening to kill her if she went near a door.  She escaped while Kenyon was in the shower and was taken to the hospital but refused medical treatment.  Fearing that he would be arrested, Kenyon left Cody and called Kelley about a week later to apologize for the incident.  When she refused to renew the relationship, Kenyon called the apartment repeatedly. Ritter would not let Kenyon speak to Kelley, and Kenyon threatened Ritter's life.  Ritter reported the threats to the police, applied for a restraining order, obtained a gun from his mother and blocked doors with shovels to prevent Kenyon from breaking into the apartment.

> Kenyon drove to Cody and, on May 4, 2001, parked on another street away from the apartment, made sure no one was in the apartment, and then entered the apartment with a crowbar, which he traded for the gun that he found inside.  Kenyon may have had a key to Ritter's apartment, and although Ritter noticed the door was

unlocked, Ritter and his fiancee, Amanda Payne, entered Ritter's apartment. Ritter screamed, and Payne turned to see Kenyon pointing a gun at Ritter. Kenyon demanded to know where Kelley was and, when Ritter told him to leave, struck Ritter with a closed fist. Ritter told Kenyon that Kelley was in jail, and Kenyon struck him again. Bleeding, Ritter stood to get a rag, and Kenyon put the gun inside of Ritter's mouth, forcing him to sit down, and again struck him. Payne was crouching in a corner comforting her crying two-year-old son. After Kenyon reached for some duct tape, saying he wanted to shut the kid up, Ritter went to the front door, opened it and told Kenyon to leave. Kenyon ordered Ritter away from the door, again threatening to kill him. Ritter told Payne to leave, and as she approached the door, Kenyon told her he would kill Ritter if she left. Payne returned to the corner with her son. Ritter again told her to leave, and as she started for the door she heard the gun discharge. Ritter, shot in the chest, collapsed outside of his door. Kenyon fled out the back door. Ritter died soon after arriving at the hospital from a single gunshot wound to the chest. Kenyon was arrested in Las Vegas, Nevada. He admitted shooting Ritter, but claimed it was an accident.

Kenyon v. State, 96 P.3d 1016, 1019 (Wyo. 2004), cert. denied, 543 U.S. 1175 (2005).

Kenyon was convicted by a jury of first degree murder, aggravated burglary, kidnaping and battery. Pursuant to Wyo. Stat. Ann. § 6-2-101(c), Kenyon received a sentence of life without parole for the first degree murder conviction, and lesser sentences for the other convictions.

Kenyon appealed his conviction and sentence to the Wyoming Supreme Court, arguing six issues, including whether the life imprisonment without parole statute, Wyo. Stat. Ann. § 6-2-101(c), was unconstitutional as a violation of the due process clauses of the United States and Wyoming Constitutions. The

Wyoming Supreme Court affirmed the conviction and sentence on August 27, 2004. Kenyon, 93 P.3d 1016. On February 22, 2005, the United States Supreme Court denied Kenyon's petition for a writ of certiorari. Kenyon v. Wyoming, 543 U.S. 1175 (2005). Kenyon then filed a petition for post-conviction relief in state court on August 4, 2006, which the state court denied on September 12, 2006. On December 29, 2006, Kenyon petitioned the Wyoming Supreme Court for a writ of certiorari, which that court denied on January 16, 2007.

Kenyon then filed the instant § 2254 petition on March 26, 2007. In addition to arguments about ineffective assistance of counsel, Kenyon again argued that Wyo. Stat. Ann. § 6-2-101 was unconstitutional. The district court held that Kenyon's petition was time-barred by the one-year limitations period applicable to habeas petitions filed by prisoners in state custody, pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d). Additionally, the district court held that neither statutory nor equitable tolling of the limitations period prevented Kenyon's petition from being deemed untimely. We agree with the district court.

## DISCUSSION

"A COA is a jurisdictional pre-requisite to our review." Clark v. Oklahoma, 468 F.3d 711, 713 (10th Cir. 2006), cert. denied, 127 S. Ct. 3007 (2007). We will issue a COA only if Kenyon makes a "substantial showing of the

-4-

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, he must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). Because the district court dismissed Kenyon's petition on procedural grounds, Kenyon must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id.; see also Clark, 468 F.3d at 713-14.

As indicated, AEDPA provides a one-year period of limitations for habeas petitioners in state custody. 28 U.S.C. § 2244(d)(1). That limitations period runs from the later of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. Accordingly, in order for Kenyon's petition to be timely, it must have been filed within one year of the date when his judgment became final. His judgment became final on February 22, 2005, when the United States Supreme Court denied his petition for a writ of certiorari. Therefore, in order for Kenyon's habeas petition to be timely filed, it must have been filed by February 22, 2006. Since his petition was filed on March 26, 2007, some two years after his conviction became final, the petition is untimely, absent statutory or equitable tolling of the limitations period.

Section 2244(d)(2) provides that the one-year limitations period is tolled while "a properly filed application for State post-conviction or other collateral review . . . is pending." However, our precedents establish that this statutory tolling period is inapplicable to Kenyon because his application for state post-conviction relief was filed *after* the one-year limitations period established by § 2244(d) had expired. See Clark, 468 F.3d at 714 ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations.").

Kenyon receives no more assistance from the equitable tolling doctrine. He argues that we should suspend the limitations period because he was transferred outside of Wyoming to a prison facility or facilities where he was unable to access legal materials.[1] "Equitable tolling of the limitations period is available 'when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.'" United States v. Gabaldon, 522 F.3d 1121, 1124 (10th Cir. 2008) (quoting Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000). We have stated:

> Equitable tolling would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct–or other uncontrollable circumstances–prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period. . . . Moreover, a petitioner must diligently pursue his federal habeas claims; a claim of insufficient access to relevant law . . . is not enough to support equitable tolling.

Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) (citations omitted).

---

[1]Specifically, Kenyon claims he was denied:

access to a legal representative from the State of Wyoming. Also, there was no access to any of Wyoming's legal procedural or State Statute information at this out-of-state 'contracted private facility.' Furthermore, there was not any access to any Wyoming Law books or material relating to legal issues involving Wyoming courts. . . . Petitioner was 'misinformed' by fellow inmates seeking release, that, by joining their petition, it would preserve his opportunity to seek federal relief.

Appellant/Petitioner's Op. Br. at 7.

Kenyon makes merely conclusory allegations that he was denied access to legal materials while incarcerated at some unnamed facility or facilities out of state. He does not demonstrate that he diligently pursued his claims; rather, he makes unsupported and very general accusations of the denial of access to legal materials and states that he was "misinformed" by fellow prisoners. This level of vague generalities regarding access is in marked contrast to the detailed legal citations and arguments that he presents on particular issues. That is insufficient to establish the due diligence necessary to support equitable tolling of the one-year limitations period.

## CONCLUSION

For the foregoing reasons, we DENY Kenyon's request for a COA and DISMISS this appeal. Kenyon's motion to proceed *in forma pauperis* is also DENIED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge