2007 WY 107

**Rick L. CAPELLEN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 05–127.

Supreme Court of Wyoming.

July 12, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric A. Johnson, Faculty Director, Jonathan Haidsiak, Student Director, and William L. Foster, Student Intern, of the Prosecution Assistance Program. Argument by Mr. Foster.

Before VOIGT, C.J., and GOLDEN, HILL,* KITE, BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Rick Capellen, pled guilty to one felony and four misdemeanor drug-related charges. The district court sentenced Mr. Capellen to eight to twelve years on the felony conviction and to time served during presentence incarceration on the misdemeanor convictions. On appeal, Mr. Capellen claims he was deprived of a fair sentencing hearing because the district court considered unreliable evidence offered by the prosecutor. We affirm.

## ISSUE

[¶ 2] Did the district court abuse its discretion in relying upon evidence presented by the prosecution at Mr. Capellen's sentencing hearing?

## FACTS

[¶ 3] During a field interview with Mr. Capellen, Riverton police officers observed Mr. Capellen attempting to hide something under his leg while he was in the driver's seat of his vehicle. After Mr. Capellen complied with the officers' request to exit the vehicle, they discovered a baggie containing methamphetamine in the area where Mr. Capellen had been seated. The officers arrested Mr. Capellen for possession of a con-

* Chief Justice at time of oral argument.

trolled substance. A search of Mr. Capellen's person incident to his arrest revealed two additional baggies of methamphetamine, a baggie containing marijuana, and $2,149.26 in currency. The combined weight of the three baggies of methamphetamine was approximately two grams. Upon searching Mr. Capellen's vehicle, the officers discovered a backpack on the backseat, inside of which was 24 grams of methamphetamine and drug paraphernalia commonly associated with the use and distribution of methamphetamine, including various zip lock style bags, syringes, ledger-style notes, and digital scales.

[¶ 4] When questioned that afternoon by DCI Agent Jeff Smith, Mr. Capellen stated that he had picked up two passengers earlier that morning and that they were in his vehicle at the time of the arrest. Mr. Capellen informed Agent Smith that he purchased the small bags of methamphetamine found on his person from one of his passengers. He also admitted to having sold one-half gram of methamphetamine to another individual for $75.00 a few days earlier, although he "usually 'gives' the [m]ethamphetamine to people rather than 'selling' it to them."

[¶ 5] The State charged Mr. Capellen with a total of eight criminal counts: two counts of misdemeanor possession of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(C) (LexisNexis 2005); two counts of misdemeanor possession of marijuana in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(A) (LexisNexis 2005); one count of felony delivery of methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2005); one count of felony possession with intent to deliver methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2005); one count of carrying a concealed weapon in violation of Wyo. Stat. Ann. § 6–8–104(a) (LexisNexis 2005); and one count of operating a vehicle without liability insurance in violation of Wyo. Stat. Ann. § 31–4–103 (LexisNexis 2005). The amended information included notices that Mr. Capellen faced enhanced penalties on several of the counts as a result of his prior convictions for drug offenses.

[¶ 6] Mr. Capellen ultimately pled guilty pursuant to a plea agreement to one count of delivering methamphetamine, two counts of possessing methamphetamine, and two counts of possessing marijuana. In exchange for Mr. Capellen's guilty pleas, the State dismissed the remaining charges and the sentence enhancements on the charges subject to the plea agreement. Under the terms of the plea agreement, the parties agreed to a one-year sentence on each of the misdemeanor drug offenses, which would be served concurrently to each other and to the sentence imposed on the felony delivery charge. The parties had no agreement as to the sentence on the delivery charge. The district court accepted Mr. Capellen's guilty pleas and conditionally accepted the plea agreement pending receipt of the pre-sentence investigation report (PSI).

[¶ 7] The PSI reflected an extensive criminal history and Mr. Capellen's prior probation failures. It also contained a recommendation for incarceration in lieu of probation. Mr. Capellen took exception to the criminal history section of the PSI which included numerous dismissed charges and allegations of unlawful conduct with no disposition. He filed a motion to have it stricken and replaced with a list of his actual convictions. The district court granted Mr. Capellen's motion and then accepted the terms of the parties' plea agreement.

[¶ 8] At sentencing, the prosecutor argued for a lengthy prison term on the delivery charge. The prosecutor characterized Mr. Capellen as a substantial supplier of methamphetamine in the Fremont County area. In support of that characterization, she pointed to the quantity of methamphetamine found in Mr. Capellen's possession at the time of his arrest, the discovery of paraphernalia associated with the manufacturing and distribution of methamphetamine during a search of Mr. Capellen's home, and information received from two drug informants.

[¶ 9] The prosecutor presented the testimony of DCI Agent Jeff Smith, who investigated the charges against Mr. Capellen. Agent Smith detailed the methamphetamine-related items found when a search warrant was executed at Mr. Capellen's residence.

Among the items discovered were scales, paraphernalia, lab parts, a handwritten diagram for the construction of a lab, and a recipe for making methamphetamine. Agent Smith also described information he obtained from informants regarding their knowledge and drug-related dealings with Mr. Capellen. Based on his experience and his investigation of the case, Agent Smith opined that Mr. Capellen was involved in the trafficking of methamphetamine in Fremont County. Defense counsel moved to strike Agent Smith's reference to the information obtained from the two informants, and the district court granted the motion.

[¶ 10] Defense counsel argued for a suspended sentence of three to six years with the requirement that Mr. Capellen complete a long-term drug treatment program. The district court declined Mr. Capellen's request for probation and sentenced him to 331 days on each of the misdemeanor convictions and eight to twelve years on the felony delivery conviction, with the sentences to be served concurrently. The district court awarded Mr. Capellen 331 days presentence confinement credit on each sentence. In pronouncing sentence on the delivery charge, the district court specifically referred to the seriousness of the offense, Mr. Capellen's criminal history, the drug-related items found in Mr. Capellen's home, Agent Smith's opinion concerning Mr. Capellen's drug activities, and the methamphetamine found in the backpack recovered from Mr. Capellen's car. Mr. Capellen timely appealed from the district court's judgment and sentence.

## STANDARD OF REVIEW

[¶ 11] We review a trial court's sentencing decision under an abuse of discretion standard. *Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo.2004). We will not disturb a sentence on appeal because of sentencing procedures unless the appellant can demonstrate an abuse of discretion, procedural conduct prejudicial to the appellant, and circumstances manifesting inherent unfairness and injustice or conduct which offends the public sense of fair play. *Peden v. State*, 2006 WY 26, ¶ 10, 129 P.3d 869, 871–72 (Wyo.2006); *Bitz v. State*, 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003); *Mehring v. State*, 860 P.2d 1101, 1115 (Wyo.1993).

## DISCUSSION

[¶ 12] In this appeal, Mr. Capellen complains of errors at sentencing which he claims denied him a fair sentencing hearing and violated his right to due process. He asserts that the prosecutor improperly presented evidence which did not appear in the PSI and characterizes the evidence as "unreliable" and "undocumented." In that regard, he identifies the following: 1) ownership of the backpack containing 24 grams of methamphetamine found on the backseat of his vehicle; 2) items recovered from a search of his home; and 3) Agent Smith's testimony that Mr. Capellen was a drug dealer and the basis for that opinion. Mr. Capellen contends the district court erred in relying upon this information in sentencing.

[¶ 13] First, Mr. Capellen asserts it was never proven that the backpack containing 24 grams of methamphetamine belonged to him, and that the allegation was made at sentencing "for the first time." It is apparent that the quantity of methamphetamine from the backpack was not the basis for the delivery charge to which Mr. Capellen pled guilty. However, Mr. Capellen's complaint that the State associated the backpack with him "for the first time" at sentencing is simply not borne out by the record. The backpack and its contents were identified in the affidavit of probable cause supporting the information, and that statement was repeated verbatim in the PSI:

... The Defendant's vehicle was also searched incident to arrest, at which time a backpack was located in the rear seat of the vehicle, which contained suspected Methamphetamine along with other paraphernalia commonly used in the use and distribution of Methamphetamine including various zip lock style bags, syringes, ledger-style notes, and digital scales.

... Officer Biesheuvel weighed the bag containing suspected Methamphetamine taken from the backseat of the Defendant's vehicle, and reported the total weight to be approximately twenty-four (24) grams.

Each bag of suspected Methamphetamine was tested using a NIK Public Safety Test Kit, which resulted in a presumptive positive for Methamphetamine.

[¶ 14] The existence of the backpack, where and when it was found, and what it contained have never been disputed. What Mr. Capellen challenges is the inference to be drawn from these undisputed facts. Although precise words indicating ownership of the backpack were not used in the affidavit or the PSI, the implication was clear. We do not believe that the prosecutor's statement, or Agent Smith's testimony, indicating the backpack belonged to Mr. Capellen should have been a surprise.

■ [¶ 15] We also disagree with Mr. Capellen's argument that the district court lacked any evidentiary basis for concluding that the backpack belonged to him. The evidence before the district court included: admissions by Mr. Capellen that he had delivered methamphetamine on several occasions; $2,149.26 in cash and 3 bags containing small amounts of methamphetamine were found on his person at the time of his arrest; and directions and parts for constructing a methamphetamine lab, as well as a recipe for making methamphetamine and scales, were found in his home. Given the totality of this evidence, the district court had a sufficient evidentiary basis to support its conclusion that the backpack and the methamphetamine belonged to Mr. Capellen.

■ [¶ 16] Moreover, we reject Mr. Capellen's contention that the district court may not consider the basis of dismissed charges. We have consistently stated that a trial court has broad discretion to consider a wide range of information about the defendant and his crimes in imposing sentence. *Doherty v. State*, 2006 WY 39, ¶ 35, 131 P.3d 963, 974 (Wyo.2006); *Swingholm v. State*, 910 P.2d 1334, 1339 (Wyo.1996); *Mehring*, 860 P.2d at 1116. In the exercise of that discretion,

the trial court is permitted to go beyond the record to consider the defendant's past conduct and activities including evidence of crimes for which charges were filed but no conviction resulted. The scope of the inquiry may include the factual basis of dismissed charges "as well as hearsay reports implicating the defendant in other crimes if such reports are deemed sufficiently reliable."

*Swingholm*, 910 P.2d at 1339 (quoting *Mehring*, 860 P.2d at 1117); *see also Doherty*, ¶ 35, 131 P.3d at 974.

[¶ 17] Next, Mr. Capellen contends the district court should not have relied upon the drug-related evidence found in his home because the State failed to disclose information about the search during discovery. The record reveals that, after defense counsel informed the district court that she had not received any information concerning the search in discovery, the prosecutor assured the court that the information had been provided to counsel:

Your Honor, that can't be farther from the truth. It was part of the entire investigation which [defense counsel]—and I have documentation—[defense counsel] was provided. It was back at the beginning, so she may not remember, but in fact she has been provided with every stick of paper we have in this file.

After that assurance, defense counsel did not pursue the matter further. Contrary to Mr. Capellen's contention, there is no clear evidence that the State failed to disclose information concerning the search.

■ [¶ 18] Finally, Mr. Capellen faults the district court for considering Agent Smith's opinion testimony that he was a drug dealer, arguing that Agent Smith's opinion was based on unreliable information. He claims the district court erroneously considered Agent Smith's testimony about the information he had obtained from the two informants. However, the district court sustained Mr. Capellen's objection to the testimony and granted his motion to strike it. The district court later reiterated that it would not consider Agent Smith's testimony regarding the informants when it identified the information it was relying upon in imposing sentence. We find no indication from our review of the record that the district court improperly relied on the stricken information in its sentencing decision. While Mr. Capellen contends that Agent Smith's opin-

ion rested entirely upon the information received from the informants, the record reveals that the opinion was also based upon the evidence recovered from the search of the home, the methamphetamine found at the time of arrest, and Mr. Capellen's admissions, collectively. Accordingly, the district court was entitled to consider Agent Smith's opinion, notwithstanding the stricken testimony concerning the informants.

■ [¶ 19] In a broad sense, Mr. Capellen takes issue with all of the evidence not contained in the PSI. In the context of sentencing, the district court may consider any information pertinent to its sentencing decision without offending due process so long as it is reliable and accurate and the defendant has been given an opportunity to respond to the information. *Kenyon v. State*, 2004 WY 100, ¶ 11, 96 P.3d 1016, 1021 (Wyo.2004). Throughout his brief, Mr. Capellen challenges the prosecution's evidence, labeling it "unverifiable," "undocumented," and "unreliable." However, the evidence presented is reliable. It consisted of sworn testimony subject to adversarial testing via vigorous cross-examination. With respect to prior notice of Agent Smith's testimony, nothing in the record indicates that defense counsel was not adequately prepared to handle the additional evidence. Defense counsel did not request a continuance at any point during the hearing and was able to address concerns regarding Agent Smith's testimony through cross-examination. We find that Mr. Capellen was afforded a full opportunity at sentencing to dispute all of the information he challenges in this appeal. Accordingly, he was not deprived of a fair sentencing.

■ [¶ 20] Although Mr. Capellen did not articulate so directly, he suggests that the district court abused its discretion by imposing a lengthy prison term which was unwarranted for his single felony conviction. The district court specifically considered, but rejected, Mr. Capellen's request for probation. Relying upon Mr. Capellen's prior failures to comply with the terms of probation, his significant criminal history involving controlled substances, and the severity of the crime of delivering methamphetamine, the district court found Mr. Capellen unsuitable for probation. The sentence imposed was well below the statutory maximum of twenty years. Wyo. Stat. Ann. § 35–7–1031(a)(i). We do not find that the district court abused its discretion in sentencing Mr. Capellen.

[¶ 21] Finally, we must note a procedural development appearing in the record. On November 22, 2005, while this appeal was pending, Mr. Capellen, through trial counsel, filed a motion in the district court under W.R.Cr.P. 35(b) for a reduction of his eight to twelve year prison sentence. The district court granted his motion, resulting in a reduced sentence of four to twelve years. Had briefing and record designation in this case been timely according to W.R.A.P. 7.06 and 3.05, we probably would not be aware of this development. However, significant delays in the prosecution of this appeal occurred because of extensions requested by Mr. Capellen and the State. As a result, the motion and order were included in the record in this appeal. No appeal was taken from the order granting the sentence reduction. *See Padilla v. State*, 2004 WY 66, ¶ 5, 91 P.3d 920, 921 (Wyo.2004) (holding that order resolving a motion for sentence reduction is a final appealable order that must be appealed within thirty days to obtain appellate jurisdiction). Accordingly, neither the district court's authority to reduce a sentence after an appeal is docketed nor the validity of the sentence reduction is presently before this Court and ordinarily we would not comment further. However, in light of the concurring opinions, additional comment is warranted.

■ [¶ 22] The district court had jurisdiction to modify the sentence while this appeal was pending pursuant to W.R.Cr.P. 35 which states:

(a) *Correction.*—The court may correct an illegal sentence at any time. Additionally the court may correct, reduce, or modify a sentence within the time and in the manner provided herein for the reduction of sentence.

(b) *Reduction.*—**A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one year after the sentence is imposed** or probation is revoked, or within one year

after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.

(Emphasis added.) Additionally, reliance upon W.R.A.P. 1.02(b) in the concurring opinions is misplaced for two reasons. First, the rule applies only to "rules . . . addressing procedural matters." Neither the challenge to the original sentence that is the subject of this appeal nor the order reducing sentence addresses procedural matters. Second, there is no conflict between W.R.Cr.P. 35(b) and W.R.A.P. 6.01(b). The two cases cited in the concurring opinions, *Jacobs v. Jacobs,* 895 P.2d 441, 444 (Wyo.1995) and *Moore v. Moore,* 809 P.2d 255, 257–58 (Wyo.1991), illustrate proper application of W.R.A.P. 6.01(b).

[¶ 23] In *Jacobs,* mother appealed the district court's refusal to consider her motion to modify custody "because the judgment involving custody was on appeal before this court." 895 P.2d at 444. We specifically addressed W.R.A.P. 6.01 and held that despite the pending appeal regarding custody, the district court retained continuing jurisdiction to modify the decree. We observed:

Wyoming Rule of Appellate Procedure 6.01(b) states:

(b) The appellate court shall acquire jurisdiction over the matters appealed when the case is docketed. In all cases, the trial court retains jurisdiction over all matters and proceedings *not the subject of the appeal* [.]

. . . The mother's motion for change of custody was based upon an allegation of changed circumstances since the time of the district court's order awarding the father custody of the children and thus did not involve matters that were the subject of her first appeal.

*Id.,* 895 P.2d at 444 (emphasis in original).

[¶ 24] In *Moore,* husband obtained an order finding wife in contempt for failing to comply with the terms of the divorce decree. Wife appealed the contempt order. On appeal, wife challenged "the jurisdiction of the district court to entertain the husband's motion for an order to show cause" because the case was pending on appeal in this Court. *Id.,* 809 P.2d at 257. We flatly rejected wife's contentions:

We do not agree with this argument. . . . For purposes of this appeal, we need only recognize that a district court has the right and the power, during the pendency of an appeal, to enforce its decree and to protect the parties as to any rights which the decree gave to them. That is precisely what the district court endeavored to do in this instance, and we hold that the district court had jurisdiction to consider the motion by the husband for an order to show cause. **We note that we frequently are confronted with appeals in divorce cases in which additional proceedings are being continued in the district court. In almost all instances, we have adopted the view that such additional proceedings, which are collateral to the issues presented in the appeal and which do not affect the issues on appeal or the outcome of the appeal, may be conducted in the district court even while the appeal is pending in this court. We hold that the district court did have jurisdiction to address the cross-petitions presented below.**

*Id.,* 809 P.2d at 257–258 (emphasis added).

[¶ 25] Our decisions in *Moore* and *Jacobs* offer insight regarding the proper interpretation and interplay of W.R.Cr.P.35(b) and W.R.A.P 6.01(b). In the criminal context, as in the domestic relations context, we are frequently confronted with appeals while additional proceedings are continuing in district court. As is obvious from this case, district courts continue to consider motions to modify sentences. They also consider motions to correct illegal sentences pursuant to W.R.Cr.P. 35(a), and make determinations

modifying or revoking probation. They decide whether a defendant who has completed boot camp should be granted probation pursuant to Wyo. Stat. Ann. § 7–13–1002 (Lexis-Nexis 2005) which states:

> (a) The sentencing court may reduce the sentence of any convicted felon who:
>
> > (i) Is certified by the department as having successfully completed the youthful offender program under W.S. 7–13–1003; and
> >
> > (ii) Makes application to the court within one (1) year after the individual began serving a sentence of incarceration at a state penal institution.

There are no doubt many other post sentencing issues which must be, and should be, resolved by the sentencing court while an appeal is pending. All of those proceedings are, as stated in *Moore*, "collateral to the issues presented in the appeal." All of those issues involve new facts developed after the original judgment and sentence was entered.

[¶ 26] The factual background regarding the motion for sentence reduction presented by Mr. Capellen is similar in nature to the motion to modify custody in the *Jacobs'* case. Shortly after sentencing, Mr. Capellen moved for stay of the sentence and sought to be released on bond pending appeal. The State resisted the motion but conceded that a sentence reduction motion might be appropriate in the future if Mr. Capellen took action to establish that a reduction was warranted. Counsel for the State explained:

> ... [M]y last point is with respect to the treatment issue. You know, I'd like to see Mr. Capellen get into treatment now, take advantage of the program that's being offered to him now and if he thinks that at some point within the next year he's got an argument to be made for sentence reduction, to make it then.

In his motion for sentence reduction, Mr. Capellen described the actions he took to support a reduction in his sentence. The motion states:

1. Rick L. Capellen was sentenced on December 7, 2004 to 8 to 12 years at [the] Wyoming State Penitentiary and was given credit for 331 days served up to December 7, 2004.

2. Prior to Sentencing, Rick L. Capellen completed 11 months of his sentence and since Sentencing has completed another 11 months for a total of 1 year and 10 months, all without incident.

3. Attached as Exhibit "A" is an *"Inmate Evaluation Form"* submitted by Rick L. Capellen's supervisor at [the] Wyoming State Penitentiary, Dorothy Robertson, Food Service Supervisor # SS03, showing that Mr. Capellen is a "very proficient worker, a self starter, finished tasks assigned to him. He is a lead man ... takes a lot of pride in his work. Works well with peers and promotes team work with crew members"; and Exhibit "B" which is a review/reclass.

4. Mr. Capellen is, in fact, currently enrolled at [the] Wyoming Honor Conservation Camp at New Castle, Wyoming, and has been enrolled there since May, 2005.

5. Additionally, attached as Exhibit "C" is a *"Certificate of Participation"* from the Wyoming Small Business Development Center; and attached as Exhibit "D" is a *"Certificate of Accomplishment"* from the Wyoming State Forestry Division.

Although no transcript of the motion hearing has been provided, the ultimate result, sentence reduction, indicates that Mr. Capellen's efforts paid dividends.

[¶ 27] According to the *Report of the Supreme Court Committee on Appellate Rules and Practices,* one of the goals of the committee in adopting W.R.A.P. 6.01 was "[t]o provide for shared jurisdiction between the appellate court and the trial court." 823–832 Wyo. Rptr. XLI–XLII (1992). The position espoused in the concurring opinions, which deprives a district court of subject matter jurisdiction to reduce a sentence while an appeal is pending, is contrary to this goal and is problematic for both procedural and policy reasons.

[¶ 28] According to the concurring opinions, a district court no longer has jurisdiction to modify a sentence pursuant to W.R.A.P. 6.01(b) "when the case is docketed"

and an appellant challenges his sentence. From a procedural standpoint, it is impossible to tell if an appellant is challenging his sentence when an appeal is docketed.[1] An appellant is not required to identify his appellate issues until his brief is filed (typically within 45 days pursuant to W.R.A.P. 7.06). Even then, it would be difficult for a district court to determine whether it has jurisdiction to modify a sentence because there is no provision in the Rules of Criminal Procedure or Rules of Appellate Procedure mandating filing of the brief in the district court. In this case, Mr. Capellen's appeal was docketed on May 10, 2005. His brief was filed on October 26, 2005.

[¶ 29] From a policy perspective, it seems obvious that a system that offers those convicted of crimes the opportunity for a sentence reduction increases the likelihood that those individuals will take appropriate action to earn a reduction. The result urged in the concurring opinions threatens that objective. The sentencing judge is in the best position to decide if a sentence modification is appropriate. There is no provision in our appellate rules that would allow this Court to consider, in the first instance, a motion to reduce or modify a sentence. If the district court is deprived of subject matter jurisdiction when the appeal is docketed, and no procedure exists at the appellate level for sentence modification, much of the incentive for an individual to seek treatment evaporates. Such an approach is undesirable, will create confusion, and is at odds with W.R.Cr.P. 35 and our precedent interpreting W.R.A.P. 6.01.

[¶ 30] Affirmed.

GOLDEN, J., files a specially concurring opinion, in which VOIGT, C.J., joins.

VOIGT, C.J., files a specially concurring opinion, in which GOLDEN, J., joins.

GOLDEN, J., specially concurring, in which VOIGT, C.J., joins.

[¶ 31] I agree with the majority's determination that no error occurred at sentencing and that the original sentence should be affirmed. I write separately because I cannot ignore a serious procedural infirmity encompassed in this appeal.

[¶ 32] The majority opinion states that, while this appeal was pending, the district court granted a motion by Capellen to reduce his original 8– to 12–year prison sentence. The existence of the district court's sentence reduction order is problematic.[2] This Court simply cannot disregard the order because, if it is allowed to stand, it supersedes the sentencing order before the Court on appeal. The end result would be that the appeal would be moot and should be dismissed. If, on the other hand, the district court lacked jurisdiction to reduce Capellen's sentence, then its order is void and of no effect, and this Court can address the merits of this appeal.

[¶ 33] Rule 6.01(b) of the Wyoming Rules of Appellate Procedure states that this Court "acquire[s] jurisdiction over the matters appealed when the case is docketed" and "the trial court retains jurisdiction over all matters and proceedings not the subject of the appeal." This Court has construed this rule to mean that a district court retains jurisdiction to conduct proceedings and decide issues that would not affect the issues on appeal or the outcome of the appeal while the appeal is pending in this Court. *Jacobs v. Jacobs*, 895 P.2d 441, 444 (Wyo.1995); *Moore v. Moore*, 809 P.2d 255, 257–58 (Wyo.1991). The sole issue in this appeal concerns the validity of the 8– to 12–year sentence. Capellen's sen-

---

1. *See* W.R.A.P. 2.07 which provides in pertinent part:

 **Notice of appeal; contents.**
 (a) The notice of appeal shall:
 (1) Specify the party or parties taking the appeal;
 (2) Identify the judgment or appealable order, or designated portion appealed; and
 (3) Name the court to which the appeal is taken.

 (4) Be accompanied by the certificate or endorsement required by Rule 2.05.
 . . .
 (c) In a criminal case, the notice of appeal shall have as an appendix the judgment and sentence or other dispositive order.

2. This Court requested supplemental briefing from the parties on the potential ramifications of the district court's order reducing Capellen's sentence.

tence reduction motion involved a matter that is the subject of this appeal. According to W.R.A.P. 6.01(b), the district court did not have jurisdiction to decide that motion after Capellen's appeal was docketed in this Court.[3]

[¶ 34] Because I believe the district court lacked jurisdiction to grant Capellen's motion for a sentence reduction, the sentence reduction order is void. This Court is, therefore, correct in considering the merits of this appeal. However, along with affirming Capellen's original sentence, this Court should make clear that the sentence reduction order is void and Capellen's original sentencing order of 8 to 12 years controls.

VOIGT, C.J., specially concurring, in which GOLDEN, J., joins.

[¶ 35] I continue to join in Justice Golden's specially concurring opinion, but I find it necessary to respond to the majority's reply to that opinion. The majority is simply wrong, and by issuing its opinion, the majority has written out of W.R.A.P. 6.01(b) the language "all matters and proceedings not the subject of the appeal." Sometimes, the context of an issue can make otherwise seemingly clear language seem unclear. But that is not true here. The subject of this appeal is the sentence imposed upon the appellant. That fact deprived the district court of jurisdiction over the sentence. The language in W.R.Cr.P. 35(b), emphasized by the majority, simply sets a period of limitations during which a sentence may be reduced; it does not grant the district court jurisdiction where it has none. Indeed, W.R.Cr.P. 35(b) actually extends that period of limitations to

within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation.

Extension of the district court's jurisdiction to reduce a sentence in such manner suggests that jurisdiction to reduce a sentence is not retained during the appeal.

[¶ 36] I also fail to see any significance in the fact that only the untimely briefing in this case allowed this Court to learn of the filing of the motion for sentence reduction. Nowhere either in the Rules of Criminal Procedure or in the Rules of Appellate Procedure does it suggest that the retention of jurisdiction in the district court depends upon whether or not the parties or the district court are able to keep something secret from this Court. The district court should have denied the motion for want of jurisdiction, or the appellant should have sought remand from this Court to pursue his motion.

[¶ 37] Next, the majority says that "[n]o appeal was taken from the order granting the sentence reduction." The first question raised by that comment might be to ask why the appellant would appeal from an order granting his motion. Beyond that, the failure to appeal from an order granted without jurisdiction is of no legal consequence in the determination of whether or not the trial court had jurisdiction to grant the underlying motion. It certainly does not lead to the majority's conclusion that, "[a]ccordingly, neither the district court's authority to reduce a sentence after an appeal is docketed nor the validity of the sentence reduction is presently before this Court." The question of the district court's authority to reduce a sentence after an appeal is docketed is before this Court because it happened in this very case, and it raised a question of jurisdiction. If the district court had jurisdiction to reduce the sentence, then the subject of the appeal was moot, and we should not have issued an opinion about it.

[¶ 38] Finally, I cannot argue with the majority's statement that *Jacobs v. Jacobs*, 895 P.2d 441, 444 (Wyo.1995) and *Moore v. Moore*, 809 P.2d 255, 257–58 (Wyo.1991) "il-

3. I recognize that W.R.Cr.P. 35(b) appears to permit a trial court to entertain a sentence reduction motion during the pendency of an appeal. However, W.R.A.P. 1.02(b) specifically states that the appellate rules "shall supersede any conflicting statutes, rules or regulations ad-

dressing procedural matters." The limitations placed on a trial court's jurisdiction by W.R.A.P. 6.01(b) therefore trump the general authority of the court to entertain a W.R.Cr.P. 35(b) motion while an appellate challenge to the legality of the subject sentence is pending in this Court.

lustrate proper application of W.R.A.P. 601(b)." Of course they do. They stand for the proposition that, in a divorce case, even while an appeal pends, issues like child support and visitation may continue to arise that need the attention of the district court, and the district court retains jurisdiction to consider those matters. Those cases are entirely dissimilar from the facts of this case, which is why Justice Golden was correct to cite them as he did in his specially concurring opinion. It is that dissimilarity that proves the majority wrong in this case.

[¶ 39] Once a criminal sentence has been appealed, the district court loses jurisdiction of that sentence until this Court issues its mandate in the case. Otherwise, we are just down here spinning our wheels, reading briefs, listening to oral argument, and writing an opinion on a moot point, which obviously is what W.R.A.P. 6.01 is trying to avoid. The point is best illustrated by this question: If this Court reverses the original judgment and sentence, what is the effect of the sentence reduction?