Representing Alexander Reed Mantle and Marjorie M. Mantle: Stephen R. Winship, Winship & Winship, PC, Casper, Wyoming. Argument by Mr. Winship.
Representing North Star Energy & Construction LLC: Lance C. Overstreet, John M. Kuker, and Jeffrey M. Boldt, Overstreet Homar & Kuker, Cheyenne, Wyoming.
Representing Gary W. Garland, Hot Iron, Inc., and GT Investments, Inc.: Kim D. Cannon & Codie D. Henderson, Davis & Cannon, LLP, Sheridan, Wyoming. Argument by Mr. Henderson.
Representing Raymond W. Garland, Matt R. Garland, Three Way, Inc., and MGM Enterprises, Inc.: Judith A. W. Studer, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming. Argument by Ms. Studer.
Representing WyoDak Energy Services, LLC: No Appearance.
Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.
FOX, Justice.
[¶1] This is the sequel in the ongoing litigation arising from a business deal that went south. We addressed the appeal of the district court's decision after a bench trial in Mantle v. North Star Energy & Construction, LLC , 2019 WY 29, 437 P.3d 758 (Wyo. 2019) (Mantle I ). Alex Mantle and Marjorie Mantle now appeal various post-trial issues. For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
ISSUES
[¶2] The Mantles raise twelve issues, which we condense and rephrase as follows:
1. Did the district court have subject matter jurisdiction to offset the judgments when that issue was pending in this Court in Mantle I ?
2. With respect to the Killmer Settlement Funds:
a. Is there a reviewable order in the record regarding whether the Garlands had standing to assert a direct claim against Mr. Killmer?
b. Did the Mantles have a superior security interest in the Killmer Settlement Funds by operation of the "general intangibles" clause of the FNB security agreement?
*844 3. Did the district court err when it awarded North Star's attorneys, The Kuker Group,[1] their attorney fees from a portion of the Killmer Settlement Funds?
4. Did the district court err when it issued a nunc pro tunc order that removed Marjorie Mantle's name from the order that disbursed the Killmer Settlement Funds?
FACTS
[¶3] We briefly summarize the facts to provide context for the issues in this appeal. A more complete discussion can be found in Mantle I , 2019 WY 29, 437 P.3d 758. The Garland brothers, Gary, Ray, and Matt, each had their own companies involved in the oil and gas business. Id. at ¶ 1, 437 P.3d at 768. In November 2011, the brothers, with their companies, formed North Star Energy & Construction, LLC. Id. at ¶¶ 5-6, 437 P.3d at 769. Alex Mantle was appointed President. Id. at ¶ 6, 437 P.3d at 769. Karl Killmer was North Star's accountant. Id. In mid-2014, Mr. Mantle and Mr. Killmer proposed to buy North Star from the Garlands. Id. at ¶ 12, 437 P.3d at 770. The parties executed a Memorandum of Understanding (MOU) that memorialized their agreement, including Mr. Killmer's and the Mantles' personal guarantees of $6.1 million of the purchase price. Id. at ¶¶ 2, 16-17, 437 P.3d at 768, 771-72. Mr. Mantle and Mr. Killmer negotiated a $3-million loan from First Northern Bank (FNB) to fund the down payment. Id. at ¶ 13, 437 P.3d at 770. Ultimately, the transaction took the form of a leveraged buyout when the FNB loan was made to North Star. Id. at ¶¶ 14, 17, 437 P.3d at 770-72.
[¶4] North Star's fortunes continued to decline, due to questionable business decisions and the dropping oil market. See id. at ¶¶ 26-32, 437 P.3d at 773-75. By December 2014, the Garlands stepped back in to try and save North Star. Id. at ¶ 33, 437 P.3d at 775. They were unsuccessful, and by August 2015 the Garlands began liquidation. Id. at ¶ 38, 437 P.3d at 776. In June 2015, the Mantles bought the $3-million FNB loan, which effectively made them a creditor of North Star. Id. at ¶ 40, 437 P.3d at 776-77.
[¶5] In May 2015, Mr. Mantle and his wife, Marjorie, sued the Garlands, the Garlands' businesses, and North Star. Id. at ¶ 42, 437 P.3d at 777. Among other claims, the Mantles sought to collect on the $3-million FNB note. Id. The Garlands countered with their claim that Mr. Mantle and Mr. Killmer breached the $6.1-million guarantee in the MOU. Id.
[¶6] The Garlands and North Star also sued Mr. Killmer for accountant malpractice.[2] Id. Mr. Killmer defaulted, id. at ¶ 44, 437 P.3d at 777, and then assigned to the Garlands and North Star any claim he had against his malpractice insurance carrier for failing to provide coverage or a defense. The district court then dismissed Mr. Killmer from the case with prejudice. Id. The Garlands and North Star eventually settled with Mr. Killmer's malpractice carrier. As part of the settlement, North Star received $121,271, which, by order of the district court, was deposited into the court registry on February 22, 2017. The Garland brothers, and their respective companies, split the rest.
[¶7] After a bench trial, the district court awarded the Mantles a $2,712,838.22 judgment against North Star based on the Mantles' assumption of the FNB loan. Id. at ¶ 47, 437 P.3d at 778. It also awarded the Mantles $250,000 against Gary and $307,000 against Ray based on some transfers of North Star property that Gary and Ray made after they resumed control of North Star in December 2014. Id. The court awarded the Garlands and their companies $6,110,000 against Mr. Mantle based on the MOU that he personally guaranteed. Id. at ¶ 48, 437 P.3d at 778. The court denied Gary's and Ray's first motions to offset the judgments. Id. at ¶ 49, 437 P.3d at 778.
[¶8] The parties appealed various aspects of the district court's rulings, and we affirmed in all respects. Id. at ¶¶ 4, 160, 437 P.3d at 768-69, 808. Gary and Ray initially *845 appealed the district court's denial of their motion to offset the judgments. While Mantle I was pending in this Court, the Mantles attempted to collect on their judgments against Gary ($250,000) and Ray ($307,000). To avoid this, Gary and Ray again moved the district court to grant their offset motion. This time, the district court granted the motion and offset the judgments. Gary and Ray notified this Court that they were dismissing their appeals of the offset issues in Mantle I . We specifically declined to address the offset issue in Mantle I . See id. at ¶ 108 n.20, 437 P.3d at 794 n.20.
[¶9] Additional facts and proceedings will be discussed below as necessary.
DISCUSSION
I. The district court did not have subject matter jurisdiction to offset the judgments when that issue was pending in this Court in Mantle I
[¶10] The Mantles contend that the district court did not have jurisdiction to grant the Garlands' second offset motion because, at that time, the issue was pending in this Court in Mantle I . We agree.
[¶11] "The existence of subject matter jurisdiction is a question of law that we review de novo." Matter of Birkholz , 2019 WY 19, ¶ 7, 434 P.3d 1102, 1104 (Wyo. 2019) (citations and quotations omitted). W.R.A.P. 6.01(b) states:
The appellate court shall acquire jurisdiction over the matters appealed when the case is docketed. In all cases, the trial court retains jurisdiction over all matters and proceedings not the subject of the appeal , including all matters covered by Rules 4 and 5, unless otherwise ordered by the appellate court.
(Emphasis added.)
[¶12] In its order after the trial, the district court noted that it considered offsetting the judgments and decided against doing so because the judgment the Garlands held was only against Mr. Mantle, while the judgments the Mantles held against Ray and Gary were awarded to Marjorie and Alex Mantle. Ray and Gary filed a "Motion to Alter or Amend Judgment Under Rule 59 WY.R.CIV.P." in which they asked the district court to reconsider its decision on offsetting the judgments. The court denied the motion.
[¶13] Approximately three months later, Gary and Ray renewed their offset argument to the district court. Both had appealed the denial of their first offset motion in Mantle I and, a month after they filed their opening briefs, the district court granted their second offset motion. Gary and Ray then withdrew the offset issue from their appeal.
[¶14] When the district court granted the Garlands' second offset motion, it noted that "every court having jurisdiction to render a particular judgment has inherent power and authority to enforce it and to exercise equitable control over such enforcement." (quoting Hurd v. Nelson , 714 P.2d 767, 771 (Wyo. 1986) ). We agree that a district court has the "inherent power to allow or compel an equitable set-off." Cargill, Inc. v. Mountain Cement Co. , 891 P.2d 57, 67 (Wyo. 1995). "A court of equity retains and possesses the power to control the manner of the execution of its decree, and has the inherent right to modify, by a subsequent order, the manner in which it shall be enforced." Hurd , 714 P.2d at 771 (citing 46 Am. Jur. 2d Judgments § 898, at 1032 (1969)). This inherent authority, however, cannot extend to issues over which this Court has acquired jurisdiction. That includes the offset issue that had been appealed in Mantle I .
[¶15] Generally, before a trial court can grant relief regarding an issue that has been appealed to this Court, the parties must first seek a remand.
In Doctors' Company v. Insurance Corporation of America , 837 P.2d 685, 686 (1992), we established the following procedure:
[D]uring the pendency of an appeal the district court may consider a Rule 60(b) motion and if it indicates that it is inclined to grant it, application then can be made to the appellate court for a remand. ... The logical consequence is that the district court may deny the motion although it cannot, until there has been a remand, grant it .... This *846 allows a new appeal from the denial of the motion and often the appellate court can consider that appeal together with the appeal from the original judgment.
Schmalz v. Schmalz , 2018 WY 90, ¶ 11, 423 P.3d 325, 328 (Wyo. 2018) (some citations omitted). This procedure is now included in W.R.C.P. 62.1 :
(a) Relief Pending Appeal . - If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
(1) defer considering the motion;
(2) deny the motion; or
(3) state either that it would grant the motion if the appellate court remands for that purpose or that the motion raises a substantial issue.
(b) Notice to the appellate court . - The movant must promptly notify the Clerk of the appellate court if the trial court states that it would grant the motion or that the motion raises a substantial issue.
(c) Remand . - The trial court may decide the motion if the appellate court remands for that purpose.
W.R.A.P. 6.01(b) and W.R.C.P. 62.1 are intended to ensure that a litigant is not simultaneously fighting the same battle in the trial court and the appellate court.
[¶16] Gary argues that, even though the offset issue was pending in this Court in Mantle I , "this Court has recognized numerous circumstances where the District Court retains jurisdiction to modify a previously entered order while an appeal is pending." (citing Garwood v. Garwood , 2010 WY 91, ¶ 26, 233 P.3d 977, 984 (Wyo. 2010) ( Garwood II ); Capellen v. State , 2007 WY 107, ¶ 22, 161 P.3d 1076, 1081-82 (Wyo. 2007) ; Jacobs v. Jacobs , 895 P.2d 441, 444-45 (Wyo. 1995) ).[3] None of these cases, however, is on point.
[¶17] In Garwood II , we concluded that W.R.A.P. 6.01 did not deprive the district court of jurisdiction to consider a post-judgment fees motion while the initial appeal was pending because "[c]onsistent with Rule 6.01, we have held that during the pendency of an appeal, the district court has the right and power to enforce its decrees and orders and to protect the parties as to any rights they acquired in the district court proceedings." 2010 WY 91, ¶ 26, 233 P.3d at 984.[4] Yet, we based that conclusion on our recognition that, because "those issues were not the subject of the [initial] appeal , the district court did not lose jurisdiction to address them." Id. at ¶ 27, 233 P.3d at 984 (emphasis added). Similarly, in Capellen and Jacobs we recognized that, while an appeal is pending, a district court retains jurisdiction to address issues that are "collateral to the issues presented in the appeal." See Capellen , 2007 WY 107, ¶ 25, 161 P.3d at 1083 (discussing Jacobs v. Jacobs ). This is consistent with W.R.A.P. 6.01(b) 's requirement that a district court "retains jurisdiction over all matters and proceedings not the subject of the appeal [.]" Capellen , 2007 WY 107, ¶ 23, 161 P.3d at 1082 (emphasis in original).
[¶18] In contrast, the district court's decision here did not merely address a matter collateral to the issues on appeal. It granted the second offset motion at the time that its original denial of the Garlands' offset motion was on appeal in Mantle I . Because the district court lost jurisdiction over the offset issue while Mantle I was pending on appeal, we reverse that aspect of its "Order on Pending Motions" and remand this issue for further proceedings. See Rock v. Lankford , 2013 WY 61, ¶ 18, 301 P.3d 1075, 1080 (Wyo. 2013) ("If a judgment below was rendered without jurisdiction, an appellate court must ordinarily reverse and remand for dismissal.") (citations and quotations omitted).[5]
*847 II. The Killmer Settlement Funds
[¶19] After the bench trial, the Mantles made various attempts to obtain most, if not all, of the Killmer Settlement Funds. On appeal, they contend only North Star, not the Garlands, had standing to assert a claim against Mr. Killmer for accountant malpractice, and that they had a security interest in the funds via the "general intangibles" language of the FNB note they acquired.
A. There is no reviewable order in the record regarding whether the Garlands had standing to assert a direct claim against Mr. Killmer
[¶20] The Mantles argue that all the Killmer Settlement Funds should be paid to North Star's creditors because the Garlands and their companies did not have standing to assert direct claims against Mr. Killmer; instead, their claims against Mr. Killmer were derivative claims on behalf of North Star since the Garlands' companies were North Star's only members. However, because the district court did not decide the issue, there is no final appealable order for us to review.
[¶21] On November 20, 2017, after the district court issued its "Order After Bench Trial," the Mantles filed a motion requesting the court credit them with, at least, a portion of the Killmer Settlement Funds. The district court denied the motion in its "Order on Post-Trial Motions and Filings and Final Judgment as to 'Order After Bench Trial.' " On March 15, 2018, the Mantles filed another motion in which they maintained that the Garlands, and their companies, only had a derivative claim on behalf of North Star against Mr. Killmer. On April 19, 2018, the district court concluded:
The Court does not have enough facts currently before it to decide this motion. Further litigation may be needed to resolve this dispute. In addition, some issues relating to these funds are currently on appeal, and the Court may not have jurisdiction to decide this issue. On appeal, Plaintiffs are arguing that Mr. Mantle should have received a credit for [the] full amount of the settlement. However, if the Defendants have to return those funds, then he would clearly not be entitled to a credit for amounts the Defendants were not allowed to keep. Thus, it does not make sense to decide this issue while the appeal is pending. The Court finds that the motion should be denied without prejudice.
[¶22] On April 26, 2018, the Mantles filed another motion asking the court what additional facts or litigation it needed to decide the issue. The Mantles also notified the court that none of the parties in Mantle I had raised any question on appeal regarding the allocation of the Killmer Settlement Funds. On July 24, 2018, the district court, in its "Order on Pending Motions," "decline[d] to make any additional findings," and thus, denied the Mantles' motion. At the end of its order, the court concluded:
[T]his is intended to be a final order, resolving all issues in the case. In the event that there are any issues remaining to be addressed, the Court finds pursuant to [Wyoming] Rule [of Civil Procedure] 54(b) that this order constitutes a final judgment as to claims and counterclaims between the parties decided herein, and that there is no just reason to delay the appeal of those issues.
[¶23] The Mantles identified all these post-trial orders in this appeal; however, there was never a final order by the district court as to this issue. We do not determine whether the perceived need for additional facts is an appropriate basis to deny the motion. The result was that the district court did not rule on this issue.
[¶24] The court's reliance on Rule 54(b) in the July order did not alleviate this problem. W.R.C.P. 54(b) states:
(b) Judgment on Multiple Claims or Involving Multiple Parties . - When an action presents more than one claim for relief - whether as a claim, counterclaim, crossclaim, or third-party claim - or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and *848 liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.
Although none of the parties has challenged the district court's use of Rule 54(b), "we may raise the issue on our own." Baker v. Speaks , 2014 WY 117, ¶ 12, 334 P.3d 1215, 1220 (Wyo. 2014). "In effect, Rule 54(b) allows a court to certify a matter for appeal only when it finally disposes of a claim [in a multi claim case] or party [in a multi-party case] ." Williams v. State , 716 P.2d 806, 807 (Utah 1986) (first emphasis in original; second emphasis added). Even if the district court's reliance on Rule 54(b) was otherwise correct, (i.e., it disposed of a "claim or party" as it related to the Garlands' standing to assert a direct claim against Mr. Killmer), that disposition must still "fully adjudicate[ ]" that claim or that party's rights. Baker , 2014 WY 117, ¶ 15, 334 P.3d at 1221. The district court's April order did not "fully adjudicate" the issue; rather, it explicitly left the matter open for further consideration. Generally, when a matter is not properly brought before us on a Rule 54(b) certification, we dismiss the appeal. See Griffin v. Bethesda Foundation , 609 P.2d 459, 461 (Wyo. 1980). However, since we are remanding this case for further consideration of the offset issue, we will also remand this issue to the district court.[6]
B. The Mantles did not have a superior security interest in the settlement funds by operation of the "general intangibles" clause of the FNB security agreement
[¶25] When North Star obtained the FNB loan, it granted FNB a security interest in North Star's "general intangibles." The agreement defined "general intangibles" to include "payment intangibles" and cited to the Uniform Commercial Code (UCC) as further guidance. It explicitly excluded "commercial tort claims."
[¶26] After the trial, the Mantles argued that North Star's "general intangibles" included all the Killmer Settlement proceeds. The Mantles did not dispute that the malpractice claim against Mr. Killmer was a "commercial tort claim" that was excluded from the "general intangibles" clause. Instead, they contended that, once that "commercial tort claim" was reduced to the settlement funds, those proceeds became a "general intangible" under the security agreement. The district court disagreed. It concluded that "the settlement of a commercial tort claim[ ] does not convert the proceeds into collateral covered by a security agreement." (citing Bayer CropScience, LLC v. Stearns Bank, N.A. , 837 F.3d 911, 916 (8th Cir. 2016).)
[¶27] Under the UCC, a creditor may obtain a security interest in a commercial tort claim, but only if the agreement specifically identifies the tort claim that is purportedly covered. See Wyo. Stat. Ann. § 34.1-9-108(e)(i) (LexisNexis 2017). In Bayer , the Eighth Circuit held:
[W]e hold that the drafters of the UCC, in implementing the heightened identification requirements of commercial tort claims including the requirement that the commercial tort claim to be in existence at the time it is encumbered, intended for the proceeds of a commercial tort claim to be excluded from an after-acquired general intangible clause . See 4 James J. White, Robert S. Summers, & Robert A. Hillman, Uniform Commercial Code § 31:5 (6th ed. 2015) (questioning "if we recognize a proceeds claim arising from a security agreement that was signed before the tort claim came into existence to be effective as to *849 funds later paid to settle the tort, have we not voided the rule in 9-108(e)(1)?").[7]
837 F.3d at 916 (emphasis added). The district court relied on Bayer to conclude that, because of the "heightened identification requirements for commercial tort claims," the legislature "intended to exclude the proceeds of a commercial tort claim from a general intangibles clause in a security agreement."
[¶28] We agree. A "general intangibles" clause is insufficient to create a security interest in the proceeds of a commercial tort claim, absent specific identification of the claim.[8] We affirm the district court's conclusion that the FNB security agreement did not cover the Killmer Settlement proceeds.
III. The district court did not err when it awarded North Star's attorneys a portion of the Killmer Settlement Funds
[¶29] North Star hired The Kuker Group to assist with its dissolution and "associated litigation," which included the claim for accountant malpractice against Mr. Killmer. After the Garlands and North Star settled with Mr. Killmer's malpractice carrier, and before North Star's $121,271 share was placed in the court registry, it was held by Gary Garland's attorneys in their firm trust account. The Kuker Group sent a certified letter to Gary's attorneys that purported to place an "attorney's lien" on the money, which, at that time, totaled $21,414.38. After the money was placed in the court registry, North Star's attorneys filed multiple motions in the district court to disburse part of the money to them for unpaid attorneys' fees.
[¶30] On April 18, 2018, in its "Order Regarding Funds on Deposit with the Clerk," the district court adopted a "first come, first serve" method to the funds held by the clerk. The court concluded that, since no statute permitted the court to supervise the dissolution of an LLC like North Star, it "must follow the statutes that govern garnishments and writs of execution." Those statutes "generally provide for a distribution on a first come, first serve basis." After the court permitted the clerk of court to collect its expenses incurred in holding the money in the court's registry, and Johnson County's claim for unpaid taxes under Wyo. Stat. Ann. § 39-13-108(d)(i) (LexisNexis 2017), The Kuker Group was next in line based on when it sent the certified letter to Gary's attorneys asserting its claim for $21,414.38. The court ordered that amount paid to The Kuker Group from the Killmer Settlement Funds.
[¶31] On appeal, both the Mantles and The Kuker Group devote much of their argument to whether The Kuker Group had an enforceable attorney lien. However, the district court's order, while referencing The Kuker Group's request for its attorney fees, does not appear to rest on whether The Kuker Group had an enforceable attorney lien under the attorney lien statute. Instead, the court appeared to adopt an equitable approach that attempted to satisfy the various requests for payment based on when those demands were made to either Gary's attorney or the district court clerk. The district court appeared to rely on the garnishment statutes which provide for a first come, first serve basis when multiple writs of garnishment are made against the same pool of money. See Wyo. Stat. Ann. § 1-15-504(a) (LexisNexis 2017).
*850 [¶32] As the Mantles admit, the LLC statutes do not contain a procedure for a district court to supervise the dissolution of an LLC. The district court looked to its equitable powers to oversee the distribution of the money the clerk held. We have recognized that, in the appropriate case, a district court may exercise its equitable powers to provide relief where a statute is otherwise silent. See Wyo. Const., art. V, § 10 ; see also Gordon v. State by & through Capitol Bldg. Rehab. , 2018 WY 32, ¶ 40, 413 P.3d 1093, 1105 (Wyo. 2018) (" Article 5, § 10, [ ] grants the district courts plenary power in all cases of law and equity[.]"); Midwest Ref. Co. v. George , 44 Wyo. 25, 7 P.2d 213, 215 (1932) ("Courts of equity, and our district courts have equitable powers, may, in certain cases, give relief without reference to the statute."). "Requests for equitable relief are matters over which the district court exercises broad discretion." Lawrence v. City of Rawlins , 2010 WY 7, ¶ 14 n.4, 224 P.3d 862, 868 n.4 (Wyo. 2010). We conclude that the district court's adoption of a first come, first serve method for the disbursement of North Star's share of the settlement funds was not inequitable under the circumstances, and thus, do not find that it abused its discretion.
IV. The district court did not err when it issued a nunc pro tunc order that removed Marjorie Mantle's name from the order that disbursed the Killmer Settlement Funds
[¶33] When the district court disbursed the Killmer Settlement Funds, it ordered that $25,923.34 be provided to "Alex and Marjorie Mantle." That amount was the result of a judgment, plus interest, that Alex Mantle had obtained against North Star in a separate case in circuit court. Afterwards, the Garlands filed a request that the district court enter a nunc pro tunc order that removed Marjorie Mantle's name because the judgment that was the basis for the $25,923.34 was awarded only to Alex Mantle. The district court agreed and concluded that the inclusion of Marjorie Mantle's name was a "clerical error." On appeal, the Mantles contend that the nunc pro tunc order was erroneous because it substantively changed the court's prior order.
[¶34] "A nunc pro tunc order is used to correct an inaccuracy in an earlier order." Heinemann v. State , 2018 WY 31, ¶ 10, 413 P.3d 644, 647 (Wyo. 2018) (citations omitted). A review of the circuit court judgment confirms the district court's decision to remove Marjorie Mantle's name because she is not a party to that judgment. Indeed, on appeal, the Mantles do not make any argument that Marjorie Mantle was entitled to the $25,923.34 that the district court disbursed out of the Killmer Settlement Funds. The district court's nunc pro tunc order to correct this mistake was not erroneous.
CONCLUSION
[¶35] The "general intangibles" language of the FNB security agreement did not attach to the Killmer Settlement Funds, The Kuker Group was entitled to a portion of those funds, and the district court's nunc pro tunc order that removed Marjorie Mantle's name was a proper use of the nunc pro tunc order. However, the district court lacked subject matter jurisdiction to reconsider the offset issue, and there is no reviewable decision in the record regarding whether the Garlands and their entities had standing to assert a direct claim against Mr. Killmer for accountant malpractice. We therefore affirm in part, reverse in part, and remand for further proceedings.

The Kuker Group is now known as Overstreet Homar & Kuker.

For ease of reference, we will refer to Mr. Killmer and his company, Killmer & Associates, as "Mr. Killmer."

For his part, Ray does not directly address the jurisdictional defect in the district court's decision to grant the second offset motion. Rather, he relies on the general rule that a court retains the equitable power to offset judgments.

Before Garwood II , we decided Garwood I that dealt with substantive aspects of the district court's judgment. Garwood v. Garwood , 2008 WY 129, 194 P.3d 319 (Wyo. 2008) (Garwood I ). In Garwood II , one of the issues was whether the district court had jurisdiction to decide a post-judgment fees motion.

Because we are remanding the offset issue to the district court, we do not reach the Mantles' arguments regarding the merits of the offset.

The district court's failure to "fully adjudicate" the Mantles' argument that the Garlands did not have standing does not affect our ability to review the other aspects of the court's April and July orders that are the subject of this appeal. See In re Big Horn River System , 803 P.2d 61, 67 (Wyo. 1990) ("[Rule 54(b) ] permits an appeal to be taken from a decision that does not adjudicate all claims or the rights of all parties when that portion of the adjudication logically can be separated from the remainder of the case."); see also Zaloudek v. Zaloudek , 2010 WY 169, ¶ 14, 245 P.3d 336, 341 (Wyo. 2010) (reviewing other aspects of a district court's post-judgment order even though part of that order was not a final appealable order).

In Bayer , the Eighth Circuit was discussing Texas's UCC provisions; specifically, § 9.108(e)(1). Bayer , 837 F.3d at 916. Wyoming's provision is identical. Wyo. Stat. Ann. § 34.1-9-108(e)(i).

In their brief, the Mantles cite to comment 15 to Wyo. Stat. Ann. § 34.1-9-109 of the UCC to support their argument. Comment 15 states, in part: "Note that once a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort." Thus, the Mantles contend that the general exclusion of commercial tort claims, absent specific identification, from a general intangibles clause ceases to apply when that commercial tort claim has been reduced to a monetary amount and becomes a "payment intangible." The Bayer court cited comment 15 in its opinion and concluded that the exclusion within § 9.108(e)(1) (our § 34.1-9-108(e)(i) ) still applied given the heightened identification requirements for commercial tort claims, and, by extension, any proceeds therefrom. Bayer , 837 F.3d at 915-16. As discussed above, we agree with that analysis and conclusion.