2006 WY 26

**Dale Evan PEDEN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–17.**

Supreme Court of Wyoming.

March 14, 2006.

Representing Appellant: Kenneth M. Koski, Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Daniel M. Fetsco, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1]  In November 2004, the district court sentenced Dale Peden (the appellant) for felony conspiracy to deliver methamphetamine. The appellant now appeals that sentence, claiming that the district court improperly considered prior uncharged criminal activity at sentencing.  We affirm.

## ISSUE

[¶ 2]  Whether the district court abused its discretion when it sentenced the appellant?

## FACTS

[¶ 3]  The appellant was initially charged with two felonies: 1) conspiracy to deliver methamphetamine in violation of Wyo. Stat. Ann. §§ 35–7–1031(a)(i) and 35–7–1042 (LexisNexis 2005);  and 2) possessing methamphetamine with the intent to deliver, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i). Pursuant to a plea agreement, the appellant pled guilty to the conspiracy charge and the State dismissed the possession charge.  The parties apparently had no agreement as to what sentence the appellant should receive.

[¶ 4]  At sentencing, the prosecutor sought to have Campbell County sheriff's sergeant Steven Hamilton (Hamilton) testify about a 2001 investigation that produced a series of taped phone calls between a confidential informant and another individual, whom the officer identified as the appellant.[1] The appellant's trial counsel questioned the relevancy of this testimony because the appellant had never faced criminal charges as a result of the 2001 investigation.  The prosecutor asserted that such evidence was "an aggravator, especially given [the appellant's] minimization of his involvement with methamphetamine in this case."  The district court overruled the appellant's objection and allowed Hamilton to testify.

[¶ 5]  According to Hamilton, who was assigned to the Wyoming Division of Criminal Investigation's northeast drug enforcement

---

1.  This information was not included in the presentence investigation report, but the prosecutor had apparently discussed the nature of Hamilton's testimony with the appellant's trial counsel prior to the sentencing hearing.

team, the appellant claimed during the taped phone calls to have "brought back ounces of controlled substances to Campbell County from Colorado." He then agreed to travel to Rifle, Colorado, and purchase an ounce of cocaine and an ounce of methamphetamine for the informant. The informant wired the appellant approximately $2,500 for that purpose. When the appellant did not return to Wyoming with the drugs, the informant called the appellant. The appellant stated that he had experienced car trouble and still needed to find a ride back to Wyoming. The appellant ultimately surrendered to South Dakota authorities on other drug charges prior to delivering the cocaine and methamphetamine to the informant. Hamilton testified that law enforcement did not recover the money the informant had wired to the appellant, and the drugs apparently "went to an unnamed or unknown individual who is now deceased."

[¶ 6] The appellant's trial counsel renewed his objection to Hamilton's testimony, adding that there had "been no real positive identification of the [appellant.]" Hamilton's testimony in that regard was essentially as follows:

> [Prosecutor:] Okay. Did you have an opportunity to review the content of the [tapes] and listen to the voices?
>
> [Hamilton:] I did not listen to them. I have them in my possession. I did read the transcript of the very first conversation, which is in the body of my report.
>
> [Prosecutor:] Okay. Did you—how were you able to identify that the party other than the confidential informant who was involved in those discussions was [the appellant]?
>
> [Hamilton:] At the time of the investigation, there was a great deal of contact between the [appellant] and the confidential informant. We believe from this contact, from conversations from individuals who came on the phone, including relatives of [the appellant] during these phone calls, that we absolutely had identified the [ap-

pellant] as the person on the other end of the phone.

[¶ 7] Hamilton acknowledged that there had been no visual identification of the appellant as the person on the phone with the informant and that the tapes were never subjected to scientific voice analysis. The district court's ruling on the appellant's objection was as follows: "Overruled. I'll take it into consideration."

[¶ 8] The prosecutor asked that the district court sentence the appellant to imprisonment for eight to fifteen years. In making that request, the prosecutor referred to the appellant's prior felony convictions, the appellant's failure to rehabilitate himself despite several prior opportunities to do so, and Hamilton's testimony (which testimony was offered "to rebut [the appellant] on allegations that his involvement in the methamphetamine culture was ... limited to sort of a user kind of person" or "using and trafficking to support his drug habits"). The appellant's trial counsel asked that the district court sentence the appellant to imprisonment for eight to fifteen years, suspend that sentence and impose a split sentence of one year in the county jail, order the appellant to participate in an inpatient treatment program, and place the appellant on supervised probation for seven to eight years.

[¶ 9] The district court sentenced the appellant to imprisonment for seven to fifteen years. In pronouncing the appellant's sentence, the district court specifically referred to the appellant's extensive criminal history and the fact that the appellant was "unwilling when he's free to take steps to try to get his conduct to conform to the law." This appeal followed.

## STANDARD OF REVIEW

[¶ 10] Sentencing decisions are normally within the discretion of the trial court. *Hamill v. State*, 948 P.2d 1356, 1358 (Wyo.1997). "A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion,[2] procedural conduct

2. " 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judg-

ment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Vaughn v. State*, 962

prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Smith v. State,* 941 P.2d 749, 750 (Wyo.1997). "An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights. The party who is appealing bears the burden to establish that an error was prejudicial." *Candelaria v. State,* 895 P.2d 434, 439–40 (Wyo.1995) (citations omitted); *see also Robinson v. Hamblin,* 914 P.2d 152, 155 (Wyo.1996).

*Trusky v. State,* 7 P.3d 5, 13 (Wyo.2000). It is the appellant's "burden to establish that the sentencing court in fact rested the sentence on false or improper premises." *Candelaria v. State,* 895 P.2d 434, 440 (Wyo. 1995), *overruled on other grounds by Allen v. State,* 2002 WY 48, ¶ 43, 43 P.3d 551, 566 (Wyo.2002) (citation omitted).

## DISCUSSION

■■■ [¶ 11] On appeal, the appellant questions the reliability of Hamilton's testimony that the appellant was "involved in this alleged transaction with the confidential informant." He claims that there was "no showing of reliability at all" because Hamilton "really had no personal knowledge to relay" to the district court and there was "no identification" of the appellant's voice. The appellant emphasizes the following facts: 1) Hamilton "never even listened to the tapes"; 2) the "voice recording was never tested"; 3) the tapes were not played at the sentencing hearing; and 4) the informant did not testify at the sentencing hearing. The appellant concludes that Hamilton's testimony "cannot fit into that wide range of factors that it is appropriate for the sentencing court to consider" and his right to due process[3] was therefore violated.

■■■ [¶ 12] A sentencing court clearly may, in its discretion, consider prior uncharged or unadjudicated criminal activity. *See, for example, Nichols v. United States,* 511 U.S. 738, 747, 114 S.Ct. 1921, 1928, 128

L.Ed.2d 745 (1994); *Hatch v. Oklahoma,* 58 F.3d 1447, 1465 (10th Cir.1995); *People v. Newman,* 91 P.3d 369, 372 (Colo.2004); *Manes v. State,* 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo.2004); and *Mehring v. State,* 860 P.2d 1101, 1117 (Wyo.1993) (scope of inquiry may include hearsay reports implicating defendant in other crimes if reports are deemed sufficiently reliable). In particular, we have said that when

imposing sentence, the trial court is given broad discretion to consider a wide variety of factors about the defendant and his crimes. *Mehring v. State,* 860 P.2d 1101, 1115 (Wyo.1993); *Griebel v. State,* 763 P.2d 475, 477 (Wyo.1988).... "W.R.Cr.P. 32(a) specifically permits information about the prior criminal record of the defendant and his characteristics to be considered by the trial court before imposing sentence. In evaluating character, the trial court, in exercising its discretion, may consider a broad range of reports and information." [*Mehring,* 860 P.2d at 1116–17]; *see also Christy v. State,* 731 P.2d 1204, 1207–08 (Wyo.1987). Evidence of prior criminal activity is "highly relevant to the sentencing decision" and may be considered by the sentencing court despite the fact that no prosecution or conviction may have resulted. *Mehring,* at 1117.

*Manes,* ¶ 9, 92 P.3d at 292. However, sentencing must still "satisfy the requirements of due process" and "[o]utside of capital proceedings, sentencing must ensure that the information the sentencing court relies upon is reliable and accurate...." *Kenyon v. State,* 2004 WY 100, ¶ 11, 96 P.3d 1016, 1021 (Wyo.2004), *cert. denied,* 543 U.S. 1175, 125 S.Ct. 1389, 161 L.Ed.2d 158 (2005). *See also Manes,* ¶ 13, 92 P.3d at 293. It is also worth noting that the rules of evidence do not apply in this context and that "[a]s it pertains to hearsay information, due process requires that the information used have some minimal indicium of reliability beyond mere allegation." W.R.E. 1101; *United States v. Beaulieu,* 893 F.2d 1177, 1181 (10th Cir.1990), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302,

P.2d 149, 151 (Wyo.1998) (quoting *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986)) (citation omitted).

3. *See* U.S. Const. amend. XIV, § 1 and Wyo. Const. art. 1, § 6.

111 L.Ed.2d 811 (1990) (internal quotations and citations omitted).

[¶ 13] The appellant does not offer any cogent argument that the manner in which Hamilton's testimony was presented to the district court, or the manner in which the district court addressed the issues raised during the sentencing hearing, constituted what the above-quoted standard of review refers to as "procedural conduct prejudicial to him." Therefore, our review will only encompass whether there was a sufficient basis for Hamilton to testify that the appellant was the "other party" to the 2001 transaction. The due process afforded a defendant during sentencing is less stringent than at trial, including relaxation of confrontation clause and hearsay considerations, the primary focus being upon the reliability of the information upon which the sentence is based. *See, for example, United States v. Fennell,* 65 F.3d 812, 814 (10th Cir.1995); *United States v. Petty,* 982 F.2d 1365, 1368 (9th Cir.1993), *amended,* 992 F.2d 1015 (1993); *United States v. Wise,* 976 F.2d 393, 402 (8th Cir.1992), *cert. denied,* 507 U.S. 989, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993); and *Beaulieu,* 893 F.2d at 1179–81. We conclude that, in light of the following considerations, the appellant has not demonstrated Hamilton's testimony was so lacking in reliability that it implicated the appellant's right to due process:

1. It is apparent from Hamilton's testimony that he was intimately involved in the 2001 investigation. He knew the details of the contacts between the informant and the other party to the transaction, possessed the tapes of the phone calls between the two, and the informant was under his "control."

2. Hamilton maintained close contact with his informant and the informant obviously knew who he or she was dealing with in consummating the 2001 transaction. According to Hamilton, there was "a great deal of contact" between the informant and the other party to the transaction; the informant initiated some of the phone calls and the other party initiated some of the phone calls. The informant also wired the other party money in order to purchase the drugs. It is reasonable to infer that Hamilton's testimony was based partially on the information he obtained from the informant.

3. The phone calls between the informant and the other party were taped. Hamilton did not actually listen to the tapes, but did review a transcript of one of the tapes, which review produced enough substantive details that Hamilton included them in his written investigative report. It is reasonable to infer that Hamilton's testimony was based partially on the information he gleaned from that transcript. Considering Hamilton's use of the word "we" in his above-quoted hearing testimony, it is also reasonable to infer that one or more additional law enforcement officers participated in the investigation and that Hamilton communicated with the other officer(s) about the taped phone conversations.

4. Some objective facts corroborate Hamilton's testimony. Hamilton indicated that other individuals (including individuals identified as the appellant's relatives) engaged in conversation during the taped phone calls. The appellant did not impeach or rebut Hamilton's representations in that regard, and Hamilton clearly relied on this information in testifying that "we absolutely had identified" the appellant. The presentence investigation report also indicates that the appellant pled guilty to, and was sentenced for, a felony drug charge in South Dakota during the time period relevant to Hamilton's investigation, that the appellant had substantial ties to Gillette, and that the appellant worked in Rifle, Colorado, for six months in 2003.

[¶ 14] The district court did not abuse its discretion when it sentenced the appellant and we, therefore, affirm.