# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 124

APRIL TERM, A.D. 2014

October 3, 2014

ANDREW WILLIAM DEEDS,

Appellant
(Defendant),

v.

S-13-0256

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, David E. Singleton, Student Director, and Katie J. Koski, Student Intern, of the Prosecution Assistance Program. Argument by Ms. Koski.

*Before BURKE, C.J., and HILL, KITE,* DAVIS, and FOX, JJ.*

*\*Chief Justice at time of Oral Argument.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   Andrew Deeds was initially charged with seven counts of first-degree sexual abuse of a minor, but entered guilty pleas to five counts of second-degree sexual abuse of a minor.  The district court sentenced him to five consecutive sentences of no less than twelve years and no more than eighteen years, and ordered that Mr. Deeds be given credit for 721 days of presentence confinement, without specifying how those days should be applied to his sentence.  On appeal, Mr. Deeds contends that the prosecutor breached the plea agreement and committed prosecutorial misconduct when she referred to elements of first-degree sexual abuse of a minor and presented unreliable allegations at the sentencing hearing.  We affirm on those issues.  We remand to the district court to specify how Mr. Deeds' presentence confinement should be applied to his sentence, in compliance with Wyoming Rule of Criminal Procedure 32(c)(2)(F).

## *ISSUES*

[¶2]   1.   Did the prosecutor breach the plea agreement when she referred at sentencing to elements of a crime to which Mr. Deeds did not plead?

2.   Did the prosecutor engage in misconduct that denied Mr. Deeds due process when she referred to elements of the no-longer-charged offense at sentencing?

3.   Did the prosecutor engage in misconduct that denied Mr. Deeds due process when she presented undocumented information of bragging, for the first time, during the sentencing hearing?

4. Was the sentence's reference to credit for presentence confinement sufficiently specific to comply with W.R.Cr.P. 32(c)(2)(F)?

## *FACTS*

[¶3]   Andrew Deeds was charged with seven counts of first-degree sexual abuse of a minor.  Wyo. Stat. Ann. § 6-2-314(a)(i) (LexisNexis 2013).  The State and Mr. Deeds agreed to a plea agreement to reduce the charges to five counts of second-degree sexual abuse of a minor.  Wyo. Stat. Ann. § 6-2-315(a)(ii) (LexisNexis 2013).  They also agreed that sentencing would be open to argument at the sentencing hearing.   The plea agreement, which was not reduced to writing, was presented by the prosecutor and agreed to by Mr. Deeds' counsel.

> [PROSECUTOR]: This plea agreement anticipates an amendment of the charge from first degree -- or sexual abuse of a minor in the first degree to sexual abuse of a minor in the second degree, five counts of that, which is a felony,

1

punishable for not more than 20 years, and a fine of not more than $10,000, or both, for each count. So that's basically changing it from first to second and dropping two counts, and I have the Second Amended Information for the Court.

THE COURT: Thank you.

. . . .

THE COURT: All right. Thank you. Any further terms?

[PROSECUTOR]: No, Your Honor. We'd just argue sentencing to the Court. That would be our plea agreement.

THE COURT: All right. Thank you. [Addressing defense counsel], has she accurately set forth the terms of the plea agreement?

[DEFENSE COUNSEL]: Yes, Your Honor, that's correct.

[¶4] Before accepting Mr. Deeds' guilty plea, the district court questioned him about the factual basis for it. The district court asked Mr. Deeds whether he performed sexual intercourse or digital penetration on the victim. Mr. Deeds replied that he had not, and that the contact with the victim consisted of "just primarily -- just touching."

[¶5] The district court then asked the prosecutor whether there were any additional facts pertinent to the plea agreement. The prosecutor replied, "I guess for purposes of second degree we don't need to -- but she provided information about intrusion, and he, at that time, confirmed that and confirmed that there were about ten times[.]" The district court then asked Mr. Deeds, "You talked to law enforcement after this and admitted to this conduct; is that correct?" Mr. Deeds replied, "Yes, sir." The district court then accepted the guilty pleas on all five amended charges.

[¶6] At the sentencing hearing, the district court reviewed the presentence investigation report (PSI) with both parties and asked whether there were any requested amendments. Mr. Deeds' counsel requested three changes, which, after some discussion, were accepted by the district court.

[¶7] The State called the victim's mother for a victim impact statement. In her statement to the court, she discussed taking the victim to the doctor where the victim described "her uncle having an orgasm." The mother also stated:

Not only has he not shown any remorse, I've also learned that he brags in detail about what he's done to my daughter. He said such things as that his penis was too large ([mother] in tears), and he would have raped her more, but it hurt her too bad, and this is stuff he's bragging about in jail. . . . Please protect any future victims and please let my daughter know that the system will protect her.

[¶8] Defense counsel and the State then presented their recommendations for sentencing and the mitigating and aggravating factors. The State stressed that Mr. Deeds had actually committed sexual intrusion despite the fact that the charges had been amended to a lesser charge not requiring intrusion as an element. The prosecutor stated that Mr. Deeds had originally admitted to intrusion and his denial of such action at the change of plea hearing was evidence of his lack of responsibility. The prosecutor also noted that Mr. Deeds was bragging about his criminal actions while in prison:

He's talked about this a lot in jail. We've been contacted by various people about his bragging about this, but the net result from that to me is that he's not sorry. He's maybe sorry he got caught, but he doesn't -- when you're bragging about it, it doesn't seem to be -- he's not grasping that he victimized somebody and this is probably going to affect her for the rest of her life.

[¶9] With regard to sentencing, the prosecution also stated:

What I -- again, what I've done is I've given this Court the ability to do -- to give the kind of treatment, which I think is very lenient treatment for a grown man having intercourse with a little girl for being sentenced to prison on one count, and then get suspended sentences on the others, to sentencing him to 20 years on each one consecutive; the Court has that leeway, everywhere from zero to a hundred years. I think somewhere more in the line of the middle of that would be appropriate, at the very least.

[¶10] Mr. Deeds' counsel then argued for reduced sentencing and increased treatment opportunities. The district court expressed reservations about the State's limited treatment options when weighed against the potential for recidivism characteristic of sexual abuse perpetrators.

3

[¶11]  Before issuing its final judgment and sentence, the district court allowed Mr. Deeds to make a statement.  Mr. Deeds did not use the opportunity to indicate acceptance of responsibility, instead rationalizing his behavior:

> Then what were the conditions or circumstances in which it or they became an involuntary problem.  Another way to look at it as such is that we resort to trying to solve this problem by choosing to do something we're accustomed to or familiar with, in other words only because of the lack of apparent remedies and/or coping mechanisms that have not been so commonly introduced in our daily lives or habits.

[¶12]  The district court sentenced Mr. Deeds to consecutive sentences of "not less than 12, nor more than 18 years in prison" on each of the five counts of second-degree sexual abuse of a minor.  In its final Judgment and Sentence, the district court explained that "[p]robation was considered by the Court and deemed inappropriate given the charge against Defendant[,]" and "[t]hat the risk of re-offense by Defendant is high."  The district court ordered that Mr. Deeds "be given credit of seven hundred twenty-one (721) days off of the minimum and maximum sentence for time served in the Sheridan County Detention Center, Sheridan, Wyoming, for pre-sentence confinement."

[¶13]  Mr. Deeds timely filed this appeal.

## DISCUSSION

### I.  Did the prosecutor breach the plea agreement when she referred at sentencing to elements of a crime to which Mr. Deeds did not plead?

[¶14]  We apply a *de novo* standard of review to determine whether the terms of the plea agreement were breached.  *Noel v. State*, 2014 WY 30, ¶ 17, 319 P.3d 134, 142 (Wyo. 2014); *Spencer v. State*, 2005 WY 105, ¶ 12, 118 P.3d 978, 982-83 (Wyo. 2005); *Ford v. State*, 2003 WY 65, ¶ 8, 69 P.3d 407, 410 (Wyo. 2003).

> A plea agreement is a contract between the defendant and the State to which the general principles of contract law are applied.  When determining whether a breach of the plea agreement has occurred we: (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered.  The prosecutor must explicitly stand by the terms of any agreement; and if the State is unable to carry out the terms, the correct remedy is withdrawal of the plea.  The State may not obtain the benefit of the agreement

4

and at the same time avoid its obligations without violating either the principles of fairness or the principles of contract law.

*Frederick v. State*, 2007 WY 27, ¶ 13, 151 P.3d 1136, 1141 (Wyo. 2007) (internal citations and quotation marks omitted).

[¶15] Our analysis of plea agreements is guided by principles of contract law, and therefore we must first consider the terms of the agreement between Mr. Deeds and the State. *Ford*, 2003 WY 65, ¶ 11, 69 P.3d at 410. Here, the plea agreement was never reduced to writing, and therefore this Court "look[s] to the recitation of the plea agreement given at the change of plea hearing to determine the terms of the agreement." *Id*. at ¶ 12, 69 P.3d at 411.

[¶16] At the change of plea hearing, the State and Mr. Deeds agreed that the agreement reduced Mr. Deeds' charges from seven counts of first-degree sexual abuse of a minor to five counts of second-degree sexual abuse of a minor.[1]

[¶17] This Court must also consider the plea agreement "in light of the defendant's reasonable understanding of the promise at the time the plea was entered." *Ford*, 2003 WY 65, ¶ 11, 69 P.3d at 410. Here, while both parties agreed to the "charge bargain," they did not stipulate to any terms regarding sentencing. In fact, the State made it clear, and both parties agreed, that sentencing would remain subject to argument at the sentencing hearing.

[¶18] As further evidence of Mr. Deeds' reasonable understanding of the agreement, prior to entering his guilty plea under the terms of the plea agreement, the district court judge engaged in the required allocution necessary for entry of a guilty plea. W.R.Cr.P. 11(b). The district court repeated the terms of the agreement and confirmed that Mr. Deeds understood the agreement and knew the effect of modifying the charges. The district court established a factual basis for the amended charges, and Mr. Deeds knowingly and voluntarily entered into the terms of the plea agreement.

[¶19] There was a valid and enforceable plea agreement between Mr. Deeds and the State. The agreement contained no limitation to what either Mr. Deeds or the State could argue with respect to sentencing. Accordingly, we conclude that the contract was not breached when the prosecutor referred to elements of first-degree sexual abuse of a minor at the sentencing hearing.

---

[1] First-degree sexual abuse of a minor requires the element of "sexual intrusion" and carries a sentencing range of no less than twenty-five years nor more than fifty years imprisonment. Wyo. Stat. Ann. § 6-2-314(a)(i), (c). Second-degree sexual abuse of a minor does not require intrusion and carries a maximum of twenty years imprisonment. Wyo. Stat. Ann. § 6-2-315(a)(ii), (b).

## II. Did the prosecutor engage in misconduct that denied Mr. Deeds due process when she referred to elements of the no-longer-charged offense at sentencing?

[¶20] Mr. Deeds argues that the prosecutor committed prosecutorial misconduct denying him due process when the State referred to the intrusion element of first-degree sexual abuse of a minor during sentencing. He claims that use of this information penalized him for a crime for which he was not convicted. We disagree with Mr. Deeds' assertions, as consideration of this information appropriately fell within the broad discretion of the sentencing judge, and the intrusion element was clearly evidenced in the PSI and victim impact testimony at sentencing.

[¶21] At his sentencing hearing, Mr. Deeds did not object to any of the information referenced by the State that he now alleges was prosecutorial misconduct. Our review of these allegations is therefore limited to plain error. *Anderson v. State*, 2014 WY 74, ¶ 40, 327 P.3d 89, 99 (Wyo. 2014) (citing *Ortiz v. State*, 2014 WY 60, ¶ 104, 326 P.3d 883, 903 (Wyo. 2014)). Plain error exists when "1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right resulting in material prejudice." *Id.* (quoting *Schreibvogel v. State*, 2010 WY 45, ¶ 19, 228 P.3d 874, 882 (Wyo. 2010)). The appellant bears the burden of proving plain error, and "[r]eversal as a result of prosecutorial misconduct is not warranted unless a reasonable probability exists that absent the error the defendant may have enjoyed a more favorable verdict." *Ortiz*, 2014 WY 60, ¶ 104, 326 P.3d at 903.

[¶22] Sentencing judges are given broad discretion to consider a wide range of factors about the defendant when imposing sentences. *E.g.*, *Joreski v. State*, 2012 WY 143, ¶ 13, 288 P.3d 413, 416 (Wyo. 2012); *Hackett v. State*, 2010 WY 90, ¶ 14, 233 P.3d 988, 992 (Wyo. 2010).

> They are free, in the exercise of their sentencing discretion, to consider victim impact statements, PSIs and other factors relating to the defendant and his crimes in imposing an appropriate sentence within the statutory range. Trial courts are permitted to consider a defendant's character when exercising their discretion to impose sentence. In evaluating character, the trial court may consider a broad range of reports and information. A defendant's cooperation with authorities and remorse for his actions are appropriate factors to be considered when imposing sentence.

*Noller v. State*, 2010 WY 30, ¶ 13, 226 P.3d 867, 871 (Wyo. 2010) (internal citations omitted).

[¶23] However, due process requires that a court consider only accurate information in imposing a sentence. *Magnus v. State*, 2013 WY 13, ¶ 26, 293 P.3d 459, 468 (Wyo. 2013).

> [A] sentencing decision cannot be based upon unreliable information, undocumented information, or inaccurate information. If a prosecutor brings undocumented or inaccurate allegations to the district court's attention during sentencing, he engages in misconduct. Nevertheless, a showing that inaccurate information was presented to the court will not necessarily justify a reversal; the defendant must demonstrate that the trial court relied upon the statements in sentencing to prevail.

*Id*. (quoting *Sandoval v. State*, 2009 WY 121, ¶ 8, 217 P.3d 393, 395-96 (Wyo. 2009)) (citations and internal quotation marks omitted). In order to demonstrate a due process violation in the context of sentencing, a defendant "must show a 'manifest injustice from the inclusion of the statements' and he must 'demonstrate that the trial court relied upon the statements in sentencing' him." *Doherty v. State*, 2006 WY 39, ¶ 30, 131 P.3d 963, 972 (Wyo. 2006) (quoting *Mehring v. State*, 860 P.2d 1101, 1117 (Wyo. 1993)).

[¶24] The district court began the sentencing hearing by reviewing the PSI with both parties, who had received the report prior to the hearing. W.R.Cr.P. 32(a)(3) ("The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.").

[¶25] The PSI included an affidavit of probable cause which stated that "[o]n other occasions, [Mr. Deeds] would put his 'privates' in [the victim's] 'privates'. . . . [Mr. Deeds] advised that on about ten occasions, he put [h]is erect penis in [the victim's] vagina. Additionally, he advised that on about ten occasions he digitally penetrated [the victim's] vagina." The PSI also contained a victim impact statement in which the mother of the victim stated, "I sat in the Doctor appt. and listened as my young daughter described what her uncle having a orgasim [sic] looked like and how much it hurt when he would stick it in her and move her back and forth on him until 'white stuff would come out all over his belly.'"

[¶26] Though Mr. Deeds requested several changes to the PSI, he did not address any of this information. "We specifically determine that filed reports and information are evidence for the exercise of sentencing discretion, subject only to rights of the convicted individual to deny, dispute or disprove." *Christy v. State*, 731 P.2d 1204, 1207-08 (Wyo. 1987). Furthermore, "the district court may consider uncharged crimes and other

7

evidence from the PSI so long as the defendant is allowed the opportunity to deny, dispute, or disprove such evidence[.]" *Bitz v. State,* 2003 WY 140, ¶ 23, 78 P.3d 257, 263 (Wyo. 2003); *Smallwood v. State,* 771 P.2d 798, 802 (Wyo. 1989) ("[T]he record clearly shows that the information before the sentencing judge . . . had been disclosed to appellant, and he was given opportunity to respond."). Mr. Deeds was allowed that opportunity and did not take it.

> A criminal defendant has both the constitutionally protected and rule-provided individual right of allocution, and the further opportunity to deny or contest presentence investigation data or to submit information in mitigation before the sentence is rendered. Not only is this a right for counsel to contest questioned information in the sentencing process, but it is also a responsibility. In the absence of denial or objection by defendant, the court can rely on presentence reports, medical evaluation resulting from sex-crime commitment, or other information, including trial testimony, as available in the file and otherwise uncontroverted, involving the events of the crime or relating to the character of the defendant.

*Christy,* 731 P.2d at 1207 (citing *Hicklin v. State,* 535 P.2d 743 (Wyo. 1975)).

[¶27] The intrusion evidence was not presented for the first time at sentencing, but was clearly included in the PSI, which included the probable cause affidavit and the victim impact testimony provided by the victim's mother. These multiple uncontested sources in the PSI referring to intrusion are strong indicia of the reliability of such information. Mr. Deeds made no attempt to prevent this evidence from entering the record available to the sentencing judge, though he had the opportunity to do so. Accordingly, the inclusion of such information during sentencing did not constitute a manifest injustice and Mr. Deeds was not denied due process. The district court judge was entitled to presume the accuracy of such information, and use that information in sentencing Mr. Deeds. We conclude that with respect to any references to intrusion made by the prosecutor at sentencing there was no transgression of a clear and unequivocal rule of law, and therefore we find no plain error.

### III. *Did the prosecutor engage in misconduct that denied Mr. Deeds due process when she presented undocumented information of bragging, for the first time, during sentencing?*

[¶28] Mr. Deeds also alleges prosecutorial misconduct that denied him due process when the prosecutor presented information to the district court that Mr. Deeds was bragging about his exploitation of the minor victim while in jail. This information was

first conveyed by the victim's mother in her victim impact testimony given at the sentencing hearing, and then relied upon by the prosecutor in her sentencing argument. Mr. Deeds failed to object to the use of this information and therefore we review for plain error. *Anderson*, 2014 WY 74, ¶ 40, 327 P.3d at 99.

[¶29] Our law is clear that a sentencing judge has broad discretion to consider a wide range of factors about a defendant when imposing a sentence. *E.g.*, *Joreski*, 2012 WY 143, ¶ 13, 288 P.3d at 416; *Hackett*, 2010 WY 90, ¶ 14, 233 P.3d at 992. Within this broad discretion, "[a]ny victim impact statement submitted to the court . . . shall be among the factors considered by the court in determining the sentence to be imposed upon the defendant[.]" Wyo. Stat. Ann. § 7-21-103(b) (LexisNexis 2013). Though Wyo. Stat. Ann. § 7-21-103(b) gives broad discretion to the sentencing judge to consider any victim impact statements, due process precludes the district court from basing a sentencing decision on "unreliable information, undocumented information, or inaccurate information." *Schaeffer v. State*, 2012 WY 9, ¶ 53, 268 P.3d 1045, 1062 (Wyo. 2012) (quoting *Hubbard v. State*, 2008 WY 12, ¶ 24, 175 P.3d 625, 630 (Wyo. 2008)); *Manes*, 2004 WY 70, ¶ 13, 92 P.3d at 293; *DeLoge*, 2002 WY 155, ¶ 13, 55 P.3d at 1239. "To demonstrate a violation of this right, [the defendant] must show a 'manifest injustice from the inclusion of the statements' and he must 'demonstrate that the trial court relied upon the statements in sentencing' him." *Doherty*, 2006 WY 39, ¶ 30, 131 P.3d at 972 (quoting *Mehring*, 860 P.2d at 1117).

[¶30] Although Wyoming's hearsay rule, W.R.E. 802, does not apply to sentencing, *Johnson v. State*, 790 P.2d 231, 235 (Wyo. 1990), due process nevertheless requires some assurance that the information relied upon is accurate. *Peden v. State*, 2006 WY 26, ¶ 12, 129 P.3d 869, 872-73 (Wyo. 2006) ("It is also worth noting that the rules of evidence do not apply in this context and that [a]s it pertains to hearsay information, due process requires that the information used have some minimal indicium of reliability beyond mere allegation.") (internal citations and quotation marks omitted)). With this in mind, we must consider whether the bragging information presented during the sentencing hearing is sufficiently reliable.

[¶31] In *Magnu*s, the appellant challenged the introduction of a memorandum filed by the State to support its recommendation for maximum sentencing. *Magnus*, 2013 WY 13, ¶ 10, 293 P.3d at 463-64. Mr. Magnus argued there was prosecutorial misconduct because the memorandum's allegations were undocumented and evidence of the allegations was never presented at trial, nor was he ever charged with the crimes. *Id*. at ¶ 27, 293 P.3d at 468. In resolving this issue, we first acknowledged that a sentencing court may,

> go beyond the record to consider the defendant's past conduct and activities including evidence of crimes for which charges were filed but no conviction resulted. The scope of the

inquiry may include the factual basis of dismissed charges as well as hearsay reports implicating the defendant in other crimes if such reports are deemed sufficiently reliable.

*Id*. at ¶ 28, 293 P.3d at 468-69 (quoting *Capellen v. State*, 2007 WY 107, ¶ 16, 161 P.3d 1076, 1080 (Wyo. 2007)) (internal quotation marks omitted).

[¶32] We concluded that the allegations in the memorandum were sufficiently reliable because they were based on reliable documentation, notably specific banking account numbers, and time periods. *Id*. at ¶ 29, 293 P.3d at 469.

[¶33] In *Peden*, we considered a challenge to the reliability of an officer's testimony at the sentencing hearing that was not contained in the PSI.[2] The testimony involved taped phone calls made by a confidential informant during a 2001 investigation into drug trafficking in Campbell County, Wyoming. *Id*. at ¶ 4, 129 P.3d at 870. The officer identified the appellant in a series of phone calls that culminated in a $2,500 drug transaction between the informant and appellant. *Id*. Mr. Peden claimed that there was "no identification" of his voice because the officer never listened to the tapes, the voice recording was never tested, the tapes were not played at the sentencing hearing, and the informant did not testify at the sentencing hearing. *Id*. at ¶ 11, 129 P.3d at 872. After considering the entire record, we found the testimony sufficiently reliable because the officer had significant contact with the informant throughout the course of the 2001 investigation and it was reasonable for him to trust that the informant knew the appellant was the other party to the transaction. Additionally, we found several objective facts corroborating the officer's testimony such as identification of the appellant's familial relatives in the transcript of the tapes, and the fact that appellant had pled guilty to a felony drug charge in South Dakota that was also a part of the 2001 investigation. *Id*. at ¶ 13, 129 P.3d at 873.

[¶34] In contrast to *Magnus* and *Peden*, here there is no reliable documentation supporting the bragging allegations other than the hearsay testimony of the mother. Without any further support, the allegations of Mr. Deeds' bragging are not sufficiently reliable to satisfy due process.

[¶35] The lack of reliability is compounded by the fact that Mr. Deeds was given no notice of the information. Our review of the record indicates that the bragging information was never presented in the mother's earlier written victim impact statement which was attached to the PSI. Instead, it was presented for the first time in the oral victim impact statement given by the victim's mother during the sentencing hearing.

---

[2] While the information was not included in the PSI, the prosecutor had discussed the nature of the testimony with the appellant's trial counsel prior to the sentencing hearing. *Peden*, 2006 WY 26, ¶ 4, 129 P.3d at 870 n.1

[¶36] Because the bragging information was undocumented in the record leading up to sentencing, and was presented for the first time during sentencing without adequate notice and little opportunity to challenge, the inclusion of this information in sentencing constitutes a manifest injustice. *Doherty*, 2006 WY 39, ¶ 30, 131 P.3d at 972.

[¶37] Nevertheless, the second prong necessary for proving a due process violation in sentencing requires that Mr. Deeds show that the trial court relied upon the bragging information in sentencing him. *Id*. Neither the record nor the final Judgment and Sentence contain any indication that the district court relied on the bragging evidence as a factual basis for its final judgment or sentence. The bragging information might have been relevant to whether Mr. Deeds accepted responsibility for his actions; however, there was ample support on that factor from other sources. The probation/parole agent noted in the PSI, "[b]ecause of [Mr. Deeds'] failure to take full responsibility, the victim continues to be re-victimized by family members," and "[Mr. Deeds'] lack of responsibility is also concerning." Furthermore, when given the opportunity to make his own statement at the sentencing hearing, Mr. Deeds presented only obtuse rationalizations of his behavior.

[¶38] Mr. Deeds pled guilty to five counts of second-degree sexual abuse of a minor, and he was sentenced within the statutorily recommended range for those violations. Considering these uncontested facts supporting the statutorily permissible sentencing range imposed on Mr. Deeds, and in the absence of any indication of reliance upon the bragging information by the sentencing court, we find no due process violation and no transgression of a clear and unequivocal rule of law. Accordingly, we affirm on this issue.

## IV. *Was the sentence's reference to credit for presentence confinement sufficiently specific to comply with W.R.Cr.P. 32(c)(2)(F)?*

[¶39] Mr. Deeds' final argument requires interpretation of W.R.Cr.P. 32(c)(2)(F), a question of law which we review *de novo*. *Weidt v. State*, 2013 WY 143, ¶ 21, 312 P.3d 1035, 1040 (Wyo. 2013); *Kelly v. Kilts*, 2010 WY 151, ¶ 9, 243 P.3d 947, 950 (Wyo. 2010) (citing *Busch v. Horton Automatics, Inc.*, 2008 WY 140, ¶ 13, 196 P.3d 787, 790 (Wyo. 2008)).

[¶40] Rule 32(c)(2)(F) requires that final sentences must "[s]tate the extent to which credit for presentence confinement is to be given for each sentenced offense." Mr. Deeds' Judgment and Sentence, issued in writing, and signed by the district court judge, stated "that Defendant be given credit of seven hundred twenty-one (721) days off the minimum and maximum sentence for time served in the Sheridan County Detention Center, Sheridan, Wyoming, for pre-sentence confinement." This statement does not clearly state whether Mr. Deeds' presentence confinement credit should be applied to one

or all of his sentenced offenses, and therefore we remand for clarification from the district court in this regard. *See Milladge v. State*, 900 P.2d 1156, 1157 (Wyo. 1995) (remanded for failure to follow sentencing rule).

## *CONCLUSION*

[¶41] We affirm on all issues, but remand to the district court to specify how the presentence confinement should be applied.